---

(No. 14845.—Rule made absolute.)
THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* D. B. BRILLOW, Respondent.

*Opinion filed June 20, 1923—Rehearing denied October 3, 1923.*

DISBARMENT—*when an attorney will be disbarred for fraud upon the court.* An attorney for the defendants in a chancery case will be disbarred where, without notice to the attorney who had actively conducted the litigation for complainants, though not the attorney of record, he procures an order to have the master's report submitted on the defendant's evidence alone, by obtaining a stipulation from certain of the attorneys of record for the complainants and falsely stating to the master in chancery that the other attorney was no longer in the case.

THOMPSON, J., dissenting.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

FRANK H. LENNARDS, for respondent.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is a disbarment proceeding against D. B. Brillow, who is engaged in the practice of law in Chicago.   The information charges him with committing a fraud on the superior court, on the master in chancery of that court and on opposing counsel in a suit filed in the superior court and which was by the court referred to the master.   The suit was an action in chancery filed by the Mount Moriah Baptist Church and others against Thomas L. Polk and others.

The suit was between factions of a church with reference to the title and use of certain church property. L. A. Dowd and William J. Brennan filed the bill as solicitors for complainants. Mrs. L. Z. Meder originally appeared as defendants' solicitor. The case was referred to master in chancery O'Donnell. An attorney named Stack and attorney Horgan also appeared before the master on behalf of complainants, but neither of them had formally entered an appearance as complainants' solicitor. The master heard some evidence. William Friedman, an attorney, was retained by certain members of the church interested in the litigation, and Friedman secured from the master's office files and copies of the pleadings to study the case. Just when respondent came into the case does not appear, but he assumed the active management of the defense. January 6, 1921, Friedman wrote respondent that subject to the consent of Dowd and Brennan, solicitors for complainants, he would enter his appearance as counsel to assist them. On the same day Friedman wrote Dowd and Brennan he had been consulted by certain members of the church about the case, and if agreeable to them he had been asked to assist them. He asked for a conference. January 7 Friedman appeared before the master and there met respondent, and the two attorneys agreed on a postponement of the hearing for one week. Friedman informed respondent he was in the case. Other continuances were agreed upon until January 21. At some of these continuances Friedman appeared on behalf of complainants and respondent for defendants. One continuance was agreed to between Friedman and respondent by telephone, and Friedman notified the master of the agreement. January 21 Friedman and respondent met in the case at the master's office. The pleadings were discussed, and Friedman stated to the master and respondent that no replication had been filed to defendants' pleas, and in that condition the pleas would be taken as true. He stated he would ask leave of court to file replications. He prepared repli-

cations, served notice on respondent that he would appear before Judge Foell on January 27 and ask leave to file replications without prejudice to the order of reference. He and the respondent appeared before the court and the respondent resisted the motion, but the court granted leave to file replications *nunc pro tunc,* and they were filed. They were signed by Friedman as solicitor for complainants, and his printed business card was on the cover. January 29 respondent served notice on Friedman, Dowd, Brennan and Horgan (the latter then, it seems, being associated with Dowd and Brennan,) that a hearing would be had before the master February 1, at which time he would enter a motion that the master rule complainants to close proof by a short date. In February or March Friedman had a consultation with Mrs. Meder about the case, and on March 18 wrote her regarding a compromise, to which letter she did not reply. Friedman testified he learned respondent was ill, and nothing more was done in the case until July 12, when respondent appeared before the master and stated he had procured an order of the court on complainants to file a transcript of the evidence taken within five days, and in default of so doing that the master report his conclusions upon the testimony heard upon behalf of defendants. That order was obtained by respondent on notice given to Dowd, Brennan and Horgan as solicitors for complainants, but Friedman was not notified. The master informed respondent the report could not be made upon the testimony as it then stood, without a stipulation from complainants' solicitors agreeing that it should be made on defendants' testimony alone. Later respondent appeared before the master with a stipulation signed by himself, Dowd, Brennan and Horgan agreeing the report might be made on the evidence of defendants, only. The stipulation was signed by Horgan in the name of the three solicitors. Friedman did not sign it and was not notified of it. When the stipulation was presented the master asked respondent whether he had notified

Friedman. Respondent said that was unnecessary, as Friedman was not in the case. The replications filed by Friedman had not been taken from the court by the master, and the master took respondent's word that Friedman was not in the case and made his report as per the stipulation. The master served notice on respondent, Dowd, Brennan and Horgan of the preparation of his report, and no objections being filed, respondent had the master's report confirmed. August 16 he had a decree entered dismissing the bill at complainants' cost for want of equity. A hearing was had upon a suggestion of damages, and judgment was entered against three complainants for $919. Friedman had no notice of any of these proceedings. September 8, after the end of the August term, someone brought a letter to Friedman's office, written on respondent's letterhead and purporting to have been written and signed by him, dated September 6, stating an execution was issued on the first day of September for $1222, and that unless William Johnson, to whom the letter was addressed, called at respondent's office September 9 to make arrangement for the satisfaction of the execution it would be placed in the hands of the sheriff for levy. That was the first notice Friedman had of the decree dismissing the bill and the judgment on the suggestion of damages. He at once went to the court house, examined the record, and learned that the decree and judgment had been entered. He thereupon interviewed the master and Mrs. Meder, and afterwards he and respondent appeared before the master. The master stated he could not act unless respondent would withdraw the decree, which he refused to do. Thereupon Friedman filed a petition and motion to have the decree vacated. A hearing was had, at which respondent gave as his reason for what he had done to procure the decree without notice to Friedman that Friedman's appearance was not on file in the case and he was not entitled to notice. Respondent contended the court had no jurisdiction to vacate the decree after the term had ex-

pired. Dowd, one of the solicitors of record for complainants, joined in the motion to vacate the decree. Respondent resisted the motion, and on the hearing Horgan testified that when respondent's clerk called to serve notices upon Dowd, Brennan and Horgan he told the clerk to take the notices to Friedman, complainants' lawyer, and refused to accept notices. When the clerk brought the stipulation authorizing the master to report on the evidence already taken, Horgan said he told the clerk to take it to Friedman, and the clerk said Friedman was not in the case and that the master suggested that Horgan sign it, whereupon he did so in the name of Dowd, Brennan and Horgan as solicitors for complainants.

The commissioner to whom the case was referred reported that the decree, the dismissing of the bill and the judgment for $919 were fraudulently obtained by respondent willfully omitting to give Friedman notice after securing the order and stipulation for the master's report without his knowledge, and that he intentionally kept from Friedman all notice thereof until after the term had expired; that the conduct of respondent was dishonorable and unprofessional, and he recommended that the rule be made absolute.

Respondent was ill when the testimony was taken before the commissioner and did not testify in this case. In his brief he contends the real charge against him is his refusal to agree to a vacation of the decree and judgment he had obtained for defendants. This is a misapprehension. The information charges him with fraud and misconduct in procuring the decree and judgment. He relies on the failure of Friedman to enter his formal appearance as a matter of record as counsel for complainants, and testified his failure to give Friedman any notice of the actions proposed to be taken, and which were taken by him in the case, was based on the ground that Friedman's name did not appear of record as counsel. He claims to have complied with

rule 21 of the superior court, which requires notices of motions to be served upon the opposite party or his attorney of record by delivering a copy to such attorney between certain hours of a business day preceding the time designated for hearing the motions. Respondent avers in his answer and insists in his brief that because Friedman did not have his name formally entered of record as counsel for complainants he was not to be treated as counsel for them and was not entitled to any notice of any proceedings or steps proposed to be taken. In his answer he denies he told the master Friedman was no longer solicitor in the case, and avers "the said Friedman never was a solicitor in said cause at any time during the said proceedings." We think respondent misconceives the office and purpose of rule 21. It is proper practice for counsel for defendants in a case to have his name entered as such counsel. Rule 21 assumes that practice will be followed and provides for service of notice on the attorney of record for the opposite party. Respondent was as fully informed Friedman was one of complainants' solicitors as if he had had his appearance formally entered of record. If the appearance had been formally entered of record it would have simply been notice to respondent of the person whom he should notify of steps proposed to be taken in the case. Respondent knew Friedman was in the case, and that he was the only counsel for complainants who was active in connection with it after he came into the case, until respondent became ill, between February and July. In view of the activities of Friedman in the case, which were known to respondent, we do not see how he can reasonably claim Friedman was never an attorney in the case. It is rather strange that respondent would consider it his duty to serve notices on Dowd, Brennan and Horgan because their names appeared as attorneys for complainants of record but who had never been active in the case since Friedman came into it, and refuse to serve notice on Friedman because his name was not formally entered of

record as counsel for complainants but who had been, since coming into the case, active in its management. The master testified when respondent notified him of an order he had procured the court to make requiring the master to report his conclusions on the testimony heard on behalf of defendants, he told respondent a stipulation would be required from complainants' solicitors agreeing that the report might be so made. Afterwards respondent appeared before the master with a stipulation signed by himself, Dowd, Brennan and Horgan that the report might be made on the evidence of defendants, only. The master asked respondent if he had presented the stipulation to Friedman, and the respondent replied that was not necessary, because Friedman was not in the case, and the master relying on respondent's word made the report. The commissioner reported that at the hearing on the motion to vacate the decree Horgan testified that when respondent's clerk came to serve notices in the case he told the clerk he understood Friedman was the lawyer and to take all notices to him. He at first refused to accept notices. When the clerk brought to him the stipulation authorizing the master to report on the evidence already written up, Horgan told the clerk to take the stipulation to Friedman, and the clerk said Friedman was not in the case and that the master had suggested that Horgan sign it, whereupon he did sign it in the name of his two associates and himself. The master denied making any such statement to respondent or to his clerk.

The respondent was admitted to the bar approximately twenty-five years ago and has since been engaged in the practice in the city of Chicago. His experience has been over too long a period to excuse his conduct on the ground that he acted in good faith believing Friedman was not an attorney in the case. He knew better. The only basis he has for making that claim is that Friedman did not have his name formally entered by the court of record as an attorney for complainants. He did file written pleadings in

the case, and this constituted a general appearance. He made and argued a motion before the court, which was resisted by respondent, and that was a good entry of appearance. It is inconceivable that an attorney of the experience of respondent could honestly believe Friedman was not an attorney in the case, and, notwithstanding his activities and the inactivities of Dowd, Brennan and Horgan, should regard it as his duty to serve notices on the latter because they appeared of record as counsel for complainants, and not on Friedman, who he knew had appeared both before the court and the master as counsel for complainants. It strikes us as strange that it did not occur to respondent that Friedman was the real attorney who should receive notice, as Dowd, Brennan and Horgan had apparently given the case no attention since Friedman came into it. We can not say the master's conclusion that the conduct of respondent in securing, without notice to Friedman, the decree dismissing the bill and the judgment for damages was dishonorable and unprofessional was not supported by the evidence. In fact, we do not see how any other reasonable conclusion could be arrived at. Respondent's failure to give Friedman notice was not a mere oversight, for both the master and Horgan suggested that he serve notice on Friedman, but respondent insisted Friedman was not in the case and it was therefore unnecessary. He knew Friedman was in the case, and we cannot escape the conviction that he did not want Friedman informed of what he was doing and proposed to do, but that his notice to Dowd, Brennan and Horgan would be a technical compliance with rule 21 and they would be less liable to resist what he proposed to do.

The report of the commissioner is confirmed, the rule made absolute and respondent's name stricken from the roll of attorneys.                    *Rule made absolute.*

Mr. JUSTICE THOMPSON, dissenting.