People of State of Illinois, Defendant in Error, v. Charles Sleezer et al., Taylor E. Wilhelm, Respondent-Plaintiff in Error.

Gen. No. 10,883.

Second District.

November 3, 1955.

Rehearing denied December 20, 1955.

Released for publication December 22, 1955.

L. H. Vogel, of Chicago, for plaintiff in error; Taylor Wilhelm, of Mendota, pro se, respondent-plaintiff in error, of counsel.

Harland D. Warren, of Ottawa, for defendant in error; Wendell Thompson, Assistant State's Attorney, of Ottawa, of counsel.

JUSTICE EOVALDI delivered the opinion of the court.

This is a contempt action against respondent, a member of the Illinois Bar, who had practiced law 33 years, in which, after rule to show cause, and answer thereto, and after a full hearing, he was found in contempt of court by the presiding judge of the Circuit Court of La Salle County, Illinois, and sentenced to 30 days in the county jail for criminal contempt, for deliberately falsifying to the court, while an officer of said court, his status as attorney in a criminal case, No. 50373, entitled The People of the State of Illinois vs. Charles Sleezer, et al., grand larceny—then pending before that court. The rule to show cause charged that respondent did commit contempt by falsely advising the court, on the day the criminal case was scheduled to go to trial, that he did not represent the defendant in the criminal case at said time, or prior thereto; that he had not been paid anything by said defendant; and, by making it appear that said Sleezer was without counsel, the respondent did prevent the criminal case from then going to trial; and that the respondent did thereby impede, obstruct, delay, prevent and hinder the trial of said criminal case.

Respondent contends that no contract of employment existed between defendant Sleezer and respondent; that the record, as shown by the original docket sheet in the criminal case, did not contain the name of respondent as defendant's attorney; and that as Sleezer had not paid respondent to represent him, respondent did not falsely represent to the court that he was not Sleezer's attorney. Respondent argues that the only persons who could possibly know whether he had been retained to represent defendant were respondent and said Sleezer; and that, as both of said persons testified that respondent had not been employed, there was no contract of employment; and, without a contract of employment, the lower court erred in finding that re-

14

spondent was in truth and in fact the attorney for Sleezer.

It appears that Charles Sleezer was arrested on January 16, 1955, on a charge of grand larceny and incarcerated in the common jail of said La Salle County. On the same day, respondent consulted with said prisoner concerning the making of bail, and as a result of said consultation, respondent had conversations or consultations with the state's attorney concerning the making of bail, resulting in Sleezer's release on bail three days after his arrest.

On March 18, 1955, an indictment was returned by the grand jury of said county charging Sleezer with grand larceny, and a second indictment, with attempted bribery. Sleezer was brought into court on March 23 and was furnished with a copy of the indictment, list of witnesses and jurors. As no counsel appeared in court with him, the court properly inquired as to whether he had counsel to represent him and defendant stated that respondent was his attorney, and it wasn't possible for him to be in court that day.

There is a dispute in the evidence as to the reason respondent was not in court on the date set for the arraignment. The state's attorney testified that on March 23 respondent called him on the telephone in his office and talked with him regarding the arraignment, service of copy of indictment, lists of witnesses and jurors, and respondent in substance stated—"he wasn't going to give me any trouble in this case, that he was busy on other matters and it would not be necessary for him to be present on arraignment." Respondent denies or does not remember these statements.

Following this date, respondent in company with defendant Sleezer, interviewed at their homes Robert Conness, Kasper Webber and Lawrence G. Ryan, encouraging them to contact one of the complaining witnesses on Sleezer's behalf; and respondent and Sleezer further contacted one of the complaining witnesses,

15

Gustav Engelhaupt, soliciting him to intervene in Sleezer's behalf by giving his approval to the state's attorney for a recommendation of probation on a plea of guilty.

In accordance with the rules of court, the state's attorney on March 31, 1955, in the presence of Herman Ritter, deputy clerk, posted in the Circuit Court room a list of criminal cases for trial commencing May 2, 1955, in which the case against Sleezer charging grand larceny was placed first on the list, the case against Sleezer charging attempted bribery being second, and a case against one Eugene Reetz, who was represented by respondent, being third on the list. The rules of court: (Rule 4) provided: "CONTINUANCES No cause placed upon the trial list will be passed except for good cause shown." (Rule 6) provided: "CRIMINAL TRIALS At least five days before the date fixed by the Court for the trial of criminal cases the State's Attorney shall post in the court room a criminal trial calendar placing thereon all criminal cases for trial and in such order as the State's Attorney may elect, which shall be called and tried in the order so adopted, unless the Court shall otherwise direct."

On Tuesday, April 26, 1955, the state's attorney sent to defendant by United States mail a notice, with the title of the cause, stating ". . . since you have not as yet entered a plea, please be advised that we would appreciate your appearing in the Circuit Court room, in the Court House, Ottawa, Illinois, on April 29, 1955 at ten o'clock A.M."

On several occasions the respondent contacted the state's attorney attempting to induce him to recommend probation for Sleezer on a plea of guilty, and on said April 29, again talked to the state's attorney concerning probation for Sleezer, or, in the alternative, to pass the Sleezer cases and try the Reetz case on May 2. On one of these occasions, respondent made the comment to the state's attorney that he was going to see

16

the judge to see if he could withdraw from the case. Respondent denies this testimony of the state's attorney.

On April 29, respondent had a conference with the presiding judge of the court in his chambers discussing Charles Sleezer making a plea in the case, and made the inquiry of the judge as to what he would do if the respondent should ask to withdraw his appearance. Upon the court's advising him that he would not allow him to do it, respondent stated that he thought so. Respondent denies these statements by the court.

On Monday, May 2, the Sleezer case was called for a plea of guilty or not guilty, and in the event of a plea of not guilty, for trial. A jury was present in open court, having been duly empaneled for the trial of pending cases. Respondent advised the court that he did not represent defendant at that time, and had not represented him prior thereto in the cause. The Sleezer case was then continued to May 3, at which time respondent again stated that he did not represent defendant. On defendant's motion for change of venue from the judge and for a continuance, the cause was continued, and later the motion for change of venue from the judge was granted, and trial by jury had before another judge.

On May 9, Judge Larkin entered a rule on respondent to show cause why he should not be held in criminal contempt, for falsely stating and representing in open court on May 2 and May 3 that he was not the attorney for Sleezer on said dates, and for further falsely stating and representing in open court on May 2 that he was not attorney for Sleezer on said May 2, or prior thereto, in the matter then before the court; that the respondent thereby wilfully and fraudulently deceived the court for the purpose of impeding, obstructing, delaying, preventing and hindering the trial of said cause, and obstructing the administration of justice.

17

An answer was filed denying the charge, and praying that the rule be quashed.

It is urged by respondent that he had not been paid by Sleezer to represent him, and therefore he did not misrepresent his status to the court. An examination of the record in this case, however, shows payments of $270 by Sleezer to respondent. It appears that after the arrest of Sleezer and his admission to bail, and before the return of the indictment, respondent was given a check on the 28th of February, 1955, by Sleezer for the sum of $150, which said check was later endorsed by the respondent, and canceled by the bank.

Attorney Joseph Guerrini testified for the people that in the office of the court reporter or in the adjoining room, on a Friday during April of this year, he had a conversation with respondent in regard to indictment 50373, People of the State of Illinois versus Charles Sleezer, and that respondent said he received $270. He further testified "I don't know that he mentioned a retainer or what case at all." Respondent testified as to the receipt of the $270 as follows: "Sleezer paid me a couple of hundred dollars on an old account with a cousin, James Sleezer, but nothing on this account at all. I could have had a conversation with attorney Joseph Guerrini in rooms adjoining the chambers and have said I received $270 from Sleezer, but I didn't say I had been retained in this case. I do not know the exact amount, I know it was a few hundred dollars, it could have been $270.00."

The following was testified to by the state's attorney as to a conversation with respondent concerning Charles Sleezer on about April 29: "You told me you had accepted a retainer of $270.00."

██ Respondent introduced into evidence the original docket sheet in cause No. 50373 for the purpose of showing that it did not appear of record that he represented the defendant during any of the proceedings

18

in said cause. From this, he argues that the court had no jurisdiction over him as the record made by the clerk of the court imports absolute verity. Reliance is placed on People v. Wilcox, 5 Ill.2d 222, 125 N.E.2d 453, in which the Supreme Court reversed the cause wherein a fine had been imposed on a lawyer's wife for contempt of court. The facts in that case are quite different from the facts in our case. There the attorney was ill and he asked his wife to present motions for one of his clients for a continuance due to his illness. The wife tried to fulfil her husband's request. The court stated that he would not entertain the motions and instructed her not to file them. She denied that the court said she could not file them. She admitted that she filed the motions, and the court stated, "The fact that you are not a lawyer will help you out. You are fined $25.00 for contempt." Another case relied on by respondent is Gardner v. The People, 100 Ill. App. 254. In that case the Appellate Court properly held that "In criminal proceedings and those involving rules for contempt, nunc pro tunc orders cannot operate to modify orders previously made or to take the place of orders intended to be made, but which were not made." That is not our case at all. Many times in criminal cases, there is no motion or other pleading on which defendant's counsel's name would appear, to whom notices should be sent or given by the clerk. It would indeed be a harsh rule of law that would deny to this defendant the right to have counsel of his own choosing represent him at the trial simply because counsel's name did not appear on the original docket sheet, or in the files of the case!

Kasper Webber testified, for the people, that on April 23, 1955, he saw respondent and Charles Sleezer at his place in the forenoon; Sleezer was driving; and he sold Sleezer some calves. "We talked, after I tied the calves and loaded them in the trunk of the car, about 15 minutes. They asked me if I thought it would

19

■■■■■■■

do any good to talk to Mr. Engelhaupt. I thought it would. Mr. Engelhaupt had been good to me." He further testified that he saw respondent twice; that "he left to see Mr. Engelhaupt. Saw him and came back. Taylor E. Wilhelm told me he thought I had enough influence to be helpful. The only question was whether I as a friend could get Mr. Engelhaupt to see the state's attorney on the question of clemency."

Lawrence G. Ryan testified on behalf of the people that he met respondent at his place about 11:00 a.m., on April 23, 1955. "I laid down on the couch and talked to Charles Sleezer and Taylor E. Wilhelm. Mr. Wilhelm said I hope you can do me a little good. Go up to see and soften up Howard Ryan a little bit." Howard Ryan, the county judge of La Salle County, is a cousin of the witness, Ryan.

Robert Conness testified: "He (Mr. Wilhelm) said he was going to try and get Mr. Sleezer out of it."

Gustav Engelhaupt, one of the complaining witnesses called by the people, testified that he had a conversation with respondent and Mr. Sleezer in the month of May, 1955, and that he didn't know the exact date. "Mr. Wilhelm did not say he had any conversations with witnesses, in regard to the case. He said he talked to farmers around here. He told me to go see those people. I suppose for probation for Sleezer. He told me he represented Sleezer. He asked me to see Judge Larkin." On cross-examination by respondent, witness testified that the conversation was in his store at Lostant, Illinois. "It could be that Taylor E. Wilhelm said he came there as a friend of Sleezer to help him and that he couldn't do anything unless the state's attorney approved it. Mr. Wilhelm said Mr. Sleezer was willing to see you were put in status quo. You would be paid any damages, but it couldn't be done unless it was done through the state's attorney's office."

■■ The authority of an attorney to appear for a client whom he holds himself out as representing is

20

presumed. The People, etc. v. Parker, 231 Ill. 478, at p. 480; City of Winchester v. Ring, 312 Ill. 544. It seems that while respondent denies he was Sleezer's attorney, he was actually, from the time of Sleezer's arrest and throughout all the proceedings mentioned herein, actively engaged as his attorney. Can it successfully be contended by respondent that he was not employed by defendant and that he was not paid to represent him, and yet, all of the witnesses who testified for the people, including the state's attorney, could be mistaken as to the conversations or conferences with respondent? Could an attorney ask of the court permission to withdraw as attorney for a defendant if he had not actually been representing said defendant? This request as stated by the presiding judge presupposes that respondent had been previously acting as defendant's attorney. Respondent under oath on May 2, 1955, when the case was first called for trial, denied the statement of the judge and stated, "I have not entered my appearance and the record will so show. I am ready to defend him when he tenders the retainer, but I will have to prepare his case, inasmuch as I have been spending my entire time in preparing the Reetz case with Kevin Kelly and anything here at this time would be a gross miscarriage of justice, so I suggest that the public defender be appointed as there is no counsel for Sleezer. Sleezer told me he was going to be in court this morning—his failure to appear is a surprise to me." It is apparent that respondent's actions, conversations and conduct resulted in delays in the trial of the case against Sleezer. On the date the case against Charles Sleezer was called for trial on May 2, 1955, defendant made application for change of venue from the judge, which motion was denied, but the cause was continued to the following day. On that day, May 3, 1955, the court appointed the public defender to represent defendant and the case was again continued for trial—to May 9, 1955. On the latter date, the motion

21

for change of venue from Judge Larkin was granted by said judge, respondent was substituted as attorney for defendant, and on motion of defendant, the cause was again continued. The case was set for trial for June 13, 1955, at which time jury trial was had before another judge, with said defendant being represented by respondent. A motion by defendant for change of venue from the judge, unless made before the date the case is called for jury trial, too often results in a delay in the trial of the case, placing the county to needless expense. Here, it appears from the testimony of the deputy clerk, Herman Ritter, that the county, by reason of these acts of respondent, was put to the expense of $1,080 for court attendance of jury for the May 2, 1955, court. Did not respondent owe a duty to the court, as an officer of that court, to make reasonable efforts in apt time to avoid this expense? Was he fair to the court when on Friday before the trial on Monday, he was still seeking to get the state's attorney's recommendation of probation on a plea of guilty? Can it be said that in all these conversations with respondent testified to by the witnesses for the people that respondent was acting only as a friend of defendant? His actions, his conduct and his statements bear out that he was actually representing the defendant on a serious charge soon to be brought to trial.

■ Attorneys are under a duty as officers of the court to make a full and frank disclosure of all matters and facts which the court ought to know. The People v. Burr, 316 Ill. 166. As stated on page 182:

"An attorney's zeal to serve his client should never be carried to the extent of causing him to seek to accomplish his purpose by a disregard of the authority of the court or by seeking to secure from a court an order or judgment without a full and frank disclosure of all matters and facts which the court ought to know. Un-

22

less lawyers, who are officers of the court, show respect to its orders and judgments how can it be expected that laymen will do so?"

Respondent further complains that when the case was called for trial on May 2, the docket showed two pertinent facts: "The defendant had not pleaded, and was not represented by counsel," and he charges this failure to the state's attorney. Respondent in this proceeding is not in position to urge this as a bar to the rule entered against him. Defendant Sleezer is not on trial in this contempt proceeding. His rights were not violated, but on the contrary, they were fully protected by the continuances and by the granting of the change of venue by the judge against whom the motion for change of venue was directed. Here, we are concerned with the actions, the conduct and the statements of respondent. Can it be said that respondent owed no duty to the court and to the state's attorney when he stated to the state's attorney on March 23, 1955, that arraignment of defendant Sleezer should proceed even though he were not in court, and then later seek to take advantage of this situation? Courts are hesitant to enter pleas for defendants unless counsel are present. With this statement by respondent, the state's attorney was justified in assuming that a plea would be entered in apt time by the defendant when counsel would appear with him in court. If the administration of justice is to be effectively and properly carried on, such practices and such conduct as we have in this case cannot be tolerated. With the volume of work constantly being pressed on our busy courts, and with the attendant expense involved in jury trials, counsel must realize that while he has a duty to perform for his client, which the courts respect, he also has a duty as an officer of the court to assist that court in the proper and prompt disposition of its business. The actions of

23

the respondent were such that they constituted acts in disrespect of the court which obstructed the administration of justice. People v. Gard, 259 Ill. 238 at pp. 242–243; Dahnke v. People, 168 Ill. 102; Beattie v. The People, 33 Ill. App. 651, 661.

■ ■ The power to punish an offender for contempt of court is inherent in a circuit court. People v. Andalman, 346 Ill. 149; People v. Wilson, 64 Ill. 195; Clark v. People, Breese, 340. Upon the commission of a contempt in open court, it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. Ex Parte Terry, 128 U. S. 289, 32 L. Ed. 405; People v. Sherwin, 354 Ill. 371; People v. Andalman, supra; People v. Gard, supra.

■ ■ In the instant case the judge did not proceed summarily with the knowledge of the facts which he had. He entered a rule to show cause, allowed respondent to file answer, set a date for the hearing, and accorded respondent a full hearing. The trial court was in the best position to judge the magnitude of the offense. Conduct which tends to embarrass or obstruct the court in the administration of justice or which tends to bring the administration of the law into disrespect or disregard constitutes a direct contempt and is punishable as such. People v. Gard, supra; Dahnke v. People, supra. Respondent was afforded an orderly trial. He was given ample opportunity to purge himself of the contempt. He failed to do so. We do not feel that we should disturb the judgment of the court. Finding nothing in the record that would justify a reversal of the judgment, it is, therefore, affirmed.

Judgment affirmed.

DOVE, P. J., concurs.