(No. 33929.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES SLEEZER *et al.*—(TAYLOR E. WILHELM, Plaintiff in Error.)

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

48

VOGEL & VOGEL, of La Salle, (L. H. VOGEL, and ROB-
ERT B. JOHNSTONE, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and
HARLAND D. WARREN, State's Attorney, of Ottawa, (FRED
G. LEACH, EDWIN A. STRUGALA, and WENDELL THOMP-
SON, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A judgment of the circuit court of LaSalle County found the respondent, Taylor Wilhelm, guilty of criminal contempt and sentenced him to jail for 30 days. The Appellate Court affirmed, (8 Ill. App.2d 12,) and respondent prosecutes this writ of error.

The charge against Wilhelm is that he was the attorney for Charles Sleezer in a prosecution for grand larceny and bribery, and that when the case was called for trial he obstructed the administration of justice by falsely representing that he was not Sleezer's attorney, thus making it appear that Sleezer was without counsel so that it was necessary to continue the case.

On Monday, May 2, 1955, jurors had been summoned, and the Sleezer case was called. Respondent stated, "I want the record to show that I do not represent Charles Sleezer and have not entered my appearance." The judge adjourned to chambers where statements were made under oath by the respondent and the State's Attorney. Respondent testified that he had not entered an appearance, and did not represent Sleezer. The Sleezer case was then continued to May 3. On May 3 the court appointed the public defender to represent Sleezer, and entered an order barring respondent from acting as attorney for Sleezer in the case. The case was continued to May 9, 1955, and the jurors were excused until that date.

On May 9, 1955, Sleezer filed a petition through attorneys Fred Wagner and Edward Baker, office associates of the respondent, asking that the rule barring respondent from representing him be vacated and that a change of venue be granted. The prayers of the petition were granted and the Sleezer case and the other cases on the criminal docket were continued to June 13. The jurors were discharged.

On May 9 the court entered a rule on respondent to show cause why he should not be held in contempt of court for falsely stating on May 2 and 3 that he was not the attorney for Sleezer on those dates, and for falsely stating on May 2 that he did not represent Sleezer on that date or prior thereto, thereby preventing the trial of the case and obstructing the administration of justice. Respondent answered the rule and denied that his representations and testimony were false. Hearings were held on May 11 and May 18, at which numerous witnesses testified. Thereafter the court entered the order in question, which stated the evidence fully and contained 79 findings of fact. Respondent was adjudged guilty of contempt as charged in the rule to show cause.

Respondent's principal contention is that the evidence

fails to establish his guilt beyond a reasonable doubt. He did not enter a formal appearance as attorney for Sleezer, and both Sleezer and the respondent testified that no contract of employment existed. Respondent relies heavily upon these circumstances to show his innocence. We do not, however, regard them as conclusive, and so turn to a consideration of the evidence.

Sleezer was arrested on January 16, 1955, and charged with the theft of certain merchandise from a store in Lostant. He was also charged with an attempt to bribe the arresting police officers. (See *People* v. *Sleezer*, 9 Ill.2d 57.) Respondent consulted with Sleezer in jail the day he was arrested and arranged for his release on bond. On March 18, 1955, Sleezer was indicted and on March 23, 1955, he was arraigned. At the arraignment Sleezer appeared without counsel. He was given a copy of the indictment, a list of the witnesses, and a list of prospective jurors. He was not required to plead, but was asked who was his attorney. He replied, "Taylor Wilhelm." At the hearing the State's Attorney testified that the respondent had discussed the question of Sleezer's arraignment with him prior to March 23, and had told him that it would be all right to arraign Sleezer in respondent's absence. Concerning this conversation respondent first stated, "I don't remember it. It could have happened, but I don't remember it." Later he flatly denied any such conversation.

In accordance with the rules of court, on March 31, 1955, the State's Attorney posted a list of criminal cases for trial commencing May 2, 1955. The first case on the list was the larceny charge against Sleezer, and the second was the charge of attempted bribery. The third case was against Eugene Reetz, whom respondent represented. The remaining cases were against George Laketa, also represented by respondent.

On or about April 23, 1955, the respondent and Sleezer drove to the homes of three farmers in the vicinity of

Lostant. Two of them were asked by the respondent to use their influence with Gustave Engelhaupt, the victim of the theft, in behalf of Sleezer. One of these witnesses testified that respondent said that he was trying to get Sleezer out of this mess if he could. The third was asked by respondent to go to see his cousin, the county judge, about the Sleezer case, and "soften things up."

Respondent and Sleezer also called on Engelhaupt during the week preceding May 2. Respondent told Engelhaupt that he represented Sleezer and that Sleezer was willing to pay damages, and asked Engelhaupt to see the State's Attorney with reference to probation for Sleezer. On April 29, 1955, respondent also asked Joseph T. Guerrini, an attorney, to intervene with the State's Attorney on behalf of Sleezer.

During the weeks between the arraignment and the date set for trial the respondent conferred frequently with the State's Attorney and with his assistant about the Sleezer case. He urged probation for Sleezer on the larceny charge, and a fine of $1000 on the bribery charge. On April 29, he conferred again with the State's Attorney, and at this conference he suggested the possibility of a fine of $2000 on the bribery charge, and again urged probation on the larceny charge.

On the same day respondent also consulted with the judge about the consequences of a plea of guilty in the case. The record does not make it clear whether this conference took place before or after the conference with the State's Attorney. He suggested a fine of $1000 on the bribery charge and probation on the larceny charge. The judge stated that during this discussion respondent asked whether the judge would permit him to withdraw his appearance, and that when the answer was negative respondent said "I thought so." The State's Attorney testified that respondent had asked him "how Judge Larkin would feel if he withdrew from the case."

With reference to the discussion with the judge about withdrawing as attorney for Sleezer, respondent's position is equivocal. He testified:

"* * * Many times a man says something he didn't think he said at all, but then the record that transpires interprets what really occurred—that is true of my visit of the 29th. You say I wanted to withdraw my appearance for Mr. Sleezer, I frankly have no more idea of what I said that day—I couldn't remember it any more with exactitude except this. I had not entered any appearance or been retained, not in language or not in fact and I think the court has taken it as an affront to the court because I made the statement of that kind that I was retained when I wasn't. I think the court thinks I deliberately lied when I never did such a thing in my life. * * *

"The Court: Isn't it true you made a statement to this effect to Harland D. Warren [the State's Attorney] in his office relative to this case—what do you think Larkin would do if I withdraw from this case?

"Mr. Wilhelm: No, I did not.

"The Court: Or nothing of that kind?

"A. I had not entered my appearance and if any language of that kind was used, Mr. Warren is entirely under a misapprehension. I had not entered my appearance. * * *"

Whether respondent had been paid by Sleezer to represent him was disputed. Respondent testified that Sleezer had paid him "a few hundred dollars on old accounts and particularly in connection with a cousin, James Sleezer,—but nothing on this account at all." The "old accounts" were not identified. The State's Attorney testified that respondent told him that he had received $270 for a retainer, that he would not defend Sleezer for that amount and that Sleezer was trying to make a loan to get more money to pay respondent. In that conversation the State's Attorney refused the respondent's request to advance the

Reetz case for trial ahead of the Sleezer case, and told the respondent he had better be prepared on Monday, May 2. Kevin Kelly, an attorney associated with the respondent in the Reetz case, was present during this conversation with the State's Attorney. He was called as a witness by respondent, but was asked no questions as to the conversation. Joseph T. Guerrini, an attorney, testified that in the course of the conversation in which respondent asked him to intervene with the State's Attorney in behalf of Sleezer, respondent stated that he had received $270. Asked if he told Guerrini that he had received $270 as a retainer in the Sleezer case, respondent testified: "I didn't say I had been retained, I may have said a few hundred dollars were paid to me but I didn't say for what service. I wouldn't be a bit surprised." Sleezer's check for $150, dated February 28 and paid to respondent, was received in evidence, but Sleezer was not asked to testify as to the total amount paid respondent or the reason for any of the payments.

Respondent's position is that no formal appearance had been entered and he had been paid no fee, and therefore had not prepared the case for trial, but had, instead, devoted his time to the preparation of the Reetz case, which followed the Sleezer case on the May 2 call of criminal cases. He characterizes his activities on behalf of Sleezer as those of a friend.

In our opinion the evidence fully supports the judgment. Respondent's contention that his activities on behalf of Sleezer prior to May 2 were those of a friend cannot be sustained. His activities from the arrest until the trial, whether commendable or not, were those of an attorney. On the eve of the trial he consulted both the judge and State's Attorney as to the possibility of probation and a specified fine in the event of pleas of guilty. He also sought to get the State's Attorney to agree to a postponement of the trial. Without question at that time he acted as attorney for Sleezer to the full extent of undertaking to enter pleas

of guilty. Whether he had received a fee from Sleezer, and if so how much, were obviously important questions on respondent's theory of the case, yet respondent's testimony on those matters was evasive and wholly unsatisfactory. Some of his testimony can be explained only on the ground that he assumed that since he had not filed a formal written appearance, he was warranted in saying that he did not represent Sleezer. But that assumption is, of course, unsound. (*People ex rel. Chicago Bar Association* v. *Brillow,* 309 Ill. 173.) In the most favorable view that can be taken of respondent's conduct, it appears that he was trying to manipulate the order in which the cases were to be tried so that he could collect more money from Sleezer, and that to that end he falsely stated that he did not represent Sleezer.

Respondent contends that the court improperly admitted and excluded evidence, and was hostile and biased. We have examined the record and find no prejudicial error in the rulings on the admissibility of evidence. The hearings were more elaborate than necessary and the atmosphere was heated at times. But when the record is viewed as a whole, it appears that the hearings were fairly conducted.

In view of the respondent's long years of practice, however, we are of the opinion that a sentence of imprisonment in the county jail for a period of thirty days is inappropriate. Accordingly, we modify the judgment of the trial court and fix the sentence at ten days in jail. As modified, the judgments of the Appellate Court and of the trial court are affirmed.

*Judgments modified and affirmed.*