The People of the State of Illinois, Plaintiff-Appellee, *v.* Michael P. Toomin, Defendant-Appellant.

(No. 57172;

First District (3rd Division)—March 21, 1974.

James J. Doherty, Public Defender, of Chicago (Stanton Bloom, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and James E. Staruck, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Respondent, Michael P. Toomin, an attorney, appeals from an order adjudging him guilty of direct contempt of court for certain conduct during his representation of two defendants, Robert Montgomery and Brian Pace, in a criminal case in the circuit court of Cook County. (On this same date, we have filed an opinion relating to one of those defendants, *People v. Montgomery* (1974), 18 Ill.App.3d 828. The precise basis for the contempt order was respondent's refusal to disclose to the trial court how he had obtained a copy of an official police report used to impeach successfully a witness for the State.

Respondent's clients were charged with multiple counts of attempt murder and aggravated battery. During the course of their trial, the

judge issued a discovery order directing the State to furnish to respondent any and all reports prepared by police officers who thereafter would be testifying as witnesses. In conformance with this order, Morgan Lloyd, the arresting officer, furnished the State a purported copy of his original arrest report. The State, in turn, gave a copy to respondent. The document bore Lloyd's signature, but it failed to indicate the time and place of his signature and did not have the signature of Lloyd's supervising officer. The copy was marked as Defendant's Exhibit No. 1 for Identification.

Respondent cross-examined Lloyd at trial regarding the incident. Lloyd recalled that Luis Pagan had informed him that two men had just attacked his friends with a baseball bat. The officer stated that Pagan had told him that the two assailants had run east toward the lake, and he rejected any suggestion by respondent at trial that Pagan had told him the men had run west.

At this time respondent produced a second document, another copy of a police report, subsequently marked as Defendant's Exhibit No. 2 for Identification. It contained not only Lloyd's signature but also the time stamp of the Chicago Police Department and the signature of Lloyd's superior. Officer Lloyd then admitted that the second copy contained a statement not found in the first exhibit, specifically that Pagan had told him that the two offenders "ran west through Lincoln Park." The officer produced his handwritten notes which also contained the statement found in Exhibit No. 2. Officer Lloyd concluded that Exhibit No. 2 and not No. 1 was the correct copy of the original and official police report, and his assertion was not challenged by the prosecutor.

After Lloyd had concluded his testimony and the jury had been excused, the trial judge asked respondent how he had obtained the second report. Respondent replied that he would be unable to supply that information, and the judge directed him to appear that afternoon prepared to defend his position. Respondent subsequently informed the trial court that the reasons for his refusal to respond to the court's inquiry were his conception of professional responsibility, the protection of his work product, and the immateriality of the inquiry. The record discloses that respondent was respectful at all times in presenting his position. The judge perceived the problem as being the non-compliance by the State with the original discovery order, and he apparently believed that he could safeguard his orders only by questioning respondent as to how the second exhibit had been obtained. Respondent again respectfully replied that he could not answer the court's question, and the judge orally cited respondent for direct contempt of court. Upon respondent's request, the matter was deferred until the criminal trial had been com-

pleted. At that time the trial judge reaffirmed his earlier finding of direct contempt in a written judgment order and fined respondent $100. From this judgment respondent appeals.

Respondent contends that the trial court erred in finding him guilty of contempt of court for the following reasons: the court's inquiry was not germane to the material issues involved at trial; the inquiry was constitutionally proscribed; the judgment order recited a mere conclusion unsupported by facts in the record; and where an attorney's disobedience of a court order is based upon a sincere belief that the order is illegal, such action is not contemptuous.

Respondent initially urges that the court's inquiry was immaterial in regard to any issue involved at trial because there was no issue regarding the authenticity of the second exhibit, and that thereby respondent was absolved of any possible contempt. The State counters that, since there was evidence that the court's discovery order had not been complied with, the court had a direct interest in safeguarding its orders and that the court's inquiry was properly directed to that effort.

██ To sustain on appeal a finding of direct contempt of court, it must be shown that the particular conduct was calculated to embarrass, hinder, or obstruct the court in the administration of justice, or to lessen its authority or dignity, or to bring the administration of law into disrepute. (*People v. Miller* (1972), 51 Ill.2d 76, 281 N.E.2d 292.) The party seeking to uphold the contempt order bears the burden of showing that the court was warranted in exercising its power. (*People v. Tavernier* (1943), 384 Ill. 388, 51 N.E.2d 528.) It should also be borne in mind that a court must exercise its power in direct contempt proceedings prudently and judiciously because normal constitutional safeguards are not applicable. (*People v. Loughran* (1954), 2 Ill.2d 258, 118 N.E.2d 310.

We believe that the trial court, under the facts and circumstances of the present case, erred in finding respondent's conduct contemptuous. In our judgment a trial court may conduct the type of inquiry attempted here only if it is related to material and relevant issues involved in the case. It is axiomatic that the more remote an inquiry is from the central issues involved, the more difficult it will be to show that one's refusal to participate in that inquiry, without more, constituted an act of direct contempt within the meaning set forth above. (See *People v. White* (1956), 8 Ill.App.2d 428, 131 N.E.2d 803.) It is quite difficult to perceive how an attorney's unwillingness to participate in an immaterial and irrelevant inquiry can be characterized as a calculated obstruction to the administration of justice or a hindrance to the court in its normal functions. Any embarrassment suffered by the court as a result of a

party's failure to participate in such an inquiry would seem to be based on the wrongfulness of the order rather than any intentional effrontery to the court. See *George v. Toal* (1972), 6 Ill.App.3d 329, 286 N.E.2d 41 (abstract opinion).

■■ An analysis of the facts in the present case discloses that the inquiry by the trial court was in no way related to any material and relevant issue in the case. The second exhibit was utilized to impeach the arresting officer's credibility, a proper exploratory collateral issue. We note that our supreme court has recently held that a trial judge is precluded from examining a statement to determine if it is in fact impeaching. (*People v. Bassett* (1974), 56 Ill.2d 285.) Moreover, the police officer, after being confronted with the conflicting exhibits, conceded that Exhibit No. 2 was the true copy of the original and official police report. Thus, the authenticity of the second document was not in issue. Since respondent's respectful refusal to answer the court's inquiry regarding an issue not germane to the case is the sole ground cited for his contempt, we do not believe that his conduct thwarted the administration of justice; nor was it contemptuous.

We appreciate the trial judge's concern over the fact that the State had not complied with his discovery order. However, we believe that a proper investigation could have been undertaken in a supplemental proceeding, with the onus of explanation resting upon the State, and specifically upon the arresting officer. The prosecution carries a heavy burden in making this type of document available to a defendant in a criminal case, and the inquiry should have been directed at the State's witness, rather than at respondent.

Because of our holding on this issue, it is unnecessary to examine respondent's other contentions. For the above reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

DEMPSEY and McGLOON, JJ., concur.