THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FELIX OCASIO, Defendant-Appellant.

First District (5th Division)   No. 1—89—0349

Opinion filed October 5, 1990.—Rehearing denied November 8, 1990.

Jack I. Rodgon, of Chicago (George S. Pfeifer, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Gunta Z. Hadac, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, Felix Ocasio was convicted *in absentia* of delivery of a controlled substance containing cocaine (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) and was sentenced to 15 years' imprisonment.

We affirm.

Initially, we note the record indicates that, at the commencement of trial proceedings, defendant was present in the courtroom and was introduced by the trial judge to the prospective jurors. Defendant remained present in court throughout *voir dire*. After the jury was selected and sworn to duty, defendant's counsel requested a conference with counsel for the State before the trial judge. The State then offered that, in return for defendant's guilty plea, the State would recommend a six-year prison sentence. The trial judge deemed the proposal acceptable in light of defendant's background and the facts of the case. Defendant was apprised of that information. Defendant was also admonished by the trial judge that the trial could be conducted in his absence. Thereafter, proceedings were recessed for lunch. When court reconvened approximately one hour later, defendant was not present.

The trial proceeded *in absentia*.

At trial, Illinois State Police Sergeant Daniel Callahan testified that in May 1987 he was an undercover agent assigned to investigate illegal narcotics activities. Callahan testified that on the evening of May 20, 1987, in conjunction with such an investigation, he travelled to the building in which defendant lived with his girl friend, Sylvia Zamora. Special Agents Curtis, Brzinski, and Clemente were assisting in a surveillance function. Callahan stated he met with defendant, asked to then buy an eighth of an ounce of cocaine from him, and inquired whether he could purchase an ounce of cocaine at a later date. Defendant agreed to sell Callahan cocaine, advised him that the price for an ounce of cocaine would be $1,400, and told him to leave and return in 20 minutes.

At approximately 7:40 p.m., Callahan returned to the building. When he knocked on the door, Zamora appeared and told him defendant was not present. Callahan told Zamora he wanted an eighth of an ounce of cocaine. Zamora directed him to a back door where she gave him a clear plastic bag of white powder in return for $200. Callahan stated he then left and met with the surveillance unit.

In the afternoon of the following day, Callahan telephoned defendant. Defendant told Callahan that he had the ounce of cocaine they had talked about earlier and repeated that the price was $1,400. Callahan explained, in general terms, the procedure for obtaining funds to purchase the cocaine. He thereafter met with Agents Brzinski and Clemente to discuss surveillance plans for his meeting with defendant.

At approximately 6:22 p.m., Callahan returned to the building where defendant lived and met defendant at a side entrance. Defendant told Callahan to drive his car around to the alley behind the building. As Callahan drove through the alley, defendant motioned for him to stop, opened the passenger door, and reached inside the car, handing Callahan a clear plastic bag of white powder. Callahan handed the $1,400 to defendant and left the area. Later, he performed a preliminary "field" test on the white powder and determined the substance contained cocaine.

On July 24, 1987, Callahan, accompanied by two other agents, arrested defendant at his residence.

Special Agent Leonard Brzinski testified to providing surveillance assistance for Callahan on the above dates. Regarding the evening of May 21, 1987, Brzinski testified he saw Callahan exit his car, approach defendant's building, return to the car, and drive into the alley. In his own car, Brzinski proceeded to the mouth of the alley. He was not, however, able to observe any exchange. Brzinski stated that when Callahan rejoined the surveillance unit, he produced a clear plastic bag containing a white powder.

Nancy Hall, a State Police forensic scientist, testifying as an expert witness, stated that tests performed on the white powder showed the substance to be 27.4 grams of cocaine.

Over defendant's counsel's objection, Assistant State's Attorney Richard Sikes was permitted to testify for the State. Sikes testified he saw a copy of defendant's answer to the State's motion for pretrial discovery which had been filed on the first day of trial. The answer listed Sylvia Zamora as a potential defense witness. Sikes stated he walked outside of the courtroom into the hallway and called out Zamora's name. He stated a woman approached him and identified herself as Zamora, but refused to talk with him.

No testimony was presented on defendant's behalf.

The record indicates that, subsequent to his conviction, defendant was taken into custody.

OPINION

■ At the outset, we observe that trial judges may continue, without delay, proceedings where defendants voluntarily absent themselves after commencement of trial in their presence, notwithstanding language in the Code of˙Criminal Procedure of 1963 (see Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1) indicating the court must wait two days, because such provision has been held by our supreme court to be permissive, not mandatory. (*People v. Flores* (1984), 104 Ill. 2d 40, 470 N.E.2d 307.) Accordingly, we note that immediate continuation of the trial in the instant case, after defendant absented himself, was proper.

Defendant's first argument on appeal is that the trial judge improperly permitted the State to comment upon defendant's absence at trial and to state defendant's flight constituted evidence of guilt. Specifically, defendant directs attention to remarks made during the State's opening statement:

"Felix Ocasio is out on bond. We broke for lunch and we haven't seen him since that time when we broke for lunch."

And the following comments made during closing argument:

"He [defendant] got caught selling cocaine to an undercover police officer and now he's attempting to avoid taking the responsibility for his criminal acts. He is doing that in a number of ways. One way he has done that is flight. [The jury] may properly consider flight as evidence of a person's guilt."

■ Because the record indicates defendant was properly orally admonished by the trial judge that a trial could be held in his absence if he failed to appear in court, we conclude defendant knowingly waived his right to be present at trial after failing to appear following the luncheon recess. (Ill. Rev. Stat. 1985, ch. 38, par. 113—4(e); *People v. Lester* (1988), 165 Ill. App. 3d 1056, 519 N.E.2d 1127.) Additionally, although the State may not proceed in a defendant's absence without making a substantial showing that the absence was voluntary (*People v. Brown* (1988), 172 Ill. App. 3d 1044, 527 N.E.2d 629), further evidence to show defendant's voluntary absence was unnecessary here. Defendant was present in the courtroom for jury selection, he was told by his attorney to return after the lunch recess, and˙he failed to appear that afternoon or on the following day. Defendant's own counsel admitted that he assumed defendant was in flight.

■ The tendency of jurors to speculate as to the reasons for a defendant's absence inherently arises from the absence of the defendant. If the absence of a defendant was voluntary, that defendant created the tendency to speculate and any prejudice that might have resulted to him. (See *People v. Brown* (1988), 172 Ill. App. 3d 1044, 527 N.E.2d 629.) Further, flight is a circumstance which can be considered as bearing upon guilt. (See *People v. Zielinski* (1979), 77 Ill. App. 3d 157, 395 N.E.2d 1020; *People v. Gary* (1976), 42 Ill. App. 3d 357, 356 N.E.2d 135.) Thus, we cannot conclude that the above comments to the jury regarding defendant's absence during the trial or in reference to defendant's flight constitute reversible error.

Defendant next argues that the trial judge erred in allowing the State to present the testimony of Assistant State's Attorney Sikes because the purpose of such testimony was only to introduce evidence of Sylvia Zamora's bias before she testified.

The record indicates defendant's counsel did not file an answer to the State's motion for discovery until the day the trial was to commence. The State was made aware of Zamora as a potential defense witness at that time because her name was listed in defendant's answer. Until then, it was unclear that any witnesses would be testifying on defendant's behalf. Further, during his opening statement, defendant's counsel indicated to the jury that Zamora, not defendant, had actually sold the drugs to Callahan and that Zamora's name would be mentioned "quite often" at trial. Counsel also commented that it was unclear why Zamora was not present at trial or charged in the case.

■ If a defendant procures, invites or acquiesces in the admission of evidence, even though it be improper, he cannot complain. (*People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44.) Here, defendant created the necessity for offering the testimony of Assistant State's Attorney Sikes by raising Zamora's name in his opening statement. The purpose of his testimony, rather than indicating Zamora's bias, was to show that defense counsel had knowledge of Zamora's whereabouts. We therefore cannot conclude it was error for the trial judge to permit Sikes' testimony.

Finally, defendant contends he was denied the right to a fair trial because no other witnesses except Callahan could testify that he was the individual charged.

■ We find no merit in that argument. A single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. (*People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317.) In a

bench trial, it is for the trial judge to determine the credibility of witnesses, to weigh the evidence, draw reasonable inferences therefrom, and to resolve conflicts in that evidence. *Slim*, 127 Ill. 2d 302, 537 N.E.2d 317.

■■ It is apparent the jury found Callahan to be a credible witness and considered his testimony was worthy of belief. He identified defendant as the individual who sold cocaine to him, he was present during defendant's arrest, and the record indicates he confirmed defendant's identity in court. Therefore, his identification of defendant as the offender was sufficient to sustain defendant's conviction.

For the above reasons, we affirm the judgment of the circuit court. As part of the judgment, we grant the State's request and assess defendant $50 as costs for this appeal.

Affirmed.

COCCIA, P.J., and MURRAY, J., concur.