THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER SIMAC, Defendant (David Sotomayor, Contemnor-Appellant).

Second District   No. 2—90—1420

Opinion filed November 3, 1992.—Rehearing denied December 4, 1992.

GEIGER, J., dissenting.

David Sotomayor, of Sotomayor & Bird, *pro se*, and Ramsell & Associates, both of Wheaton, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defense attorney David Sotomayor (contemnor) appeals the judgment of direct criminal contempt entered against him at the conclusion of the trial of defendant, Christopher Simac. On appeal, the contemnor argues that (1) the evidence is insufficient to support a finding of contempt; and (2) the grounds stated in the order of contempt are conclusory and unsupported by the record.

Defendant was charged with driving while his license was revoked and with failing to yield while making a left turn. At his bench trial on December 11, 1990, the court directed all witnesses who were going to testify to come forward and be sworn. The contemnor indicated that defendant would not be testifying. Initially,

the State's only witness was Officer Ronald H. Lamorte of the City of Wood Dale, Illinois. A person later identified as David P. Armanentos, a clerical employee of defense counsel's law firm, sat near the contemnor at counsel table.

Officer Lamorte testified regarding an automobile accident he investigated on March 20, 1990. He sought out the drivers of the vehicles. He identified Armanentos, who was sitting next to the contemnor and dressed in a white shirt with blue stripes, as being the defendant. The court stated, "Identity of the defendant is noted for the record." Lamorte stated that, at the scene of the accident, the person he had identified as defendant told Lamorte he was the driver of the Pontiac involved in the accident. The driver of the Pontiac admitted that he had attempted to make a left-hand turn and proceed westbound on Irving Park Road and he was struck by a Chevrolet Nova. Lamorte later arrested defendant for driving on a revoked license and for failure to yield while making a left-hand turn. Lamorte testified regarding the certified driving abstract of defendant which was admitted into evidence.

On cross-examination, Lamorte admitted that he had never seen defendant driving and did not witness the accident. The State then rested.

The contemnor's motion to exclude witnesses was granted, and the officer was asked to wait outside the courtroom. The contemnor then asked to call a witness. When the court asked if this witness had been sworn, the clerk answered, "No." The witness, who had been sitting next to the contemnor, was David Armanentos. After being sworn, Armanentos stated that he was not the driver of the vehicle in question on March 20, 1990.

Under cross-examination by the prosecutor, Armanentos said that he did not know defendant. He said he worked as a clerical employee in the contemnor's law firm. Contemnor had brought him in and instructed him to sit at counsel table to see whether he would be identified as the defendant.

Armanentos had been told that defendant looked a little like him. Armanentos did not know anything about the accident. He identified a white male (the defendant) sitting in the back row of the courtroom as being a man he had seen the contemnor speaking to before the trial began. The white male had dark blond hair and was wearing glasses and a white shirt with red stripes. Armanentos was also wearing glasses. His hair was parted down the middle, but the other individual's hair was combed straight back. Armanentos admitted that he resembled the other individual, who was tall,

white, and thin. The court asked Armanentos where he was when the witnesses were sworn. He replied that he was seated at the table.

The contemnor was permitted to state for the record that Armanentos never approached the bench, that he was seated where he was told and was not sworn when the witnesses were called forward. The contemnor argued that there was no fraud perpetrated on the court and the defendant was in open court as required. The State's witness, Officer Lamorte, identified the person next to the contemnor as the defendant and as the one to whom he spoke on the date of the accident. Because of the misidentification, the contemnor asked for a directed finding in favor of defendant.

When the court asked if the State had any other witnesses, the State requested that defendant, Christopher Simac, be called to the stand. The contemnor objected that the State had no right to call defendant in view of his fifth amendment privilege. Over objection, defendant was called to the stand and was sworn. After stating his name for the record, defendant invoked his right not to answer the State's questions and was excused. The State then requested that the contemnor be called to testify, and the court denied this request. The State asked that defendant take "his position" next to his attorney and that it be permitted to recall the police officer. The court stated: "[Defendant] can sit any place he wants to in the courtroom. He is here." The State was permitted to recall the officer over the contemnor's objection.

When Officer Lamorte retook the stand, he was asked to "take a good look around the courtroom right now" to identify defendant. The officer again identified Armanentos as the one to whom he had spoken at the scene. The court directed a finding of not guilty because of the misidentification.

The court also found that defense counsel should be held in direct criminal contempt of court for placing Armanentos in such a manner as to mislead the State's Attorney and the officer. The court added this was "purposely done" to "mislead the Court." The contemnor urged that he did not misrepresent anything to the court and that Armanentos did not approach the bench. The contemnor pointed out that defendant was in open court and the officer had two opportunities to identify him among four individuals present in the courtroom. The order entered on December 11, 1990, stated that the contemnor was held in direct contempt of court "for having a person bearing the likeness" of the defendant "sit at the counsel table with him in the location usually occupied by the

[defendant]." A fine of $500 was imposed, but the payment was stayed until the following day, the cause having been continued.

The following day, the trial court made supplemental findings in a written order. The court found that it was the totality of the conduct of counsel in court in connection with this incident that was the basis for the court's finding of direct criminal contempt for misrepresentation by inference. The following paraphrases the court's findings:

(1) the person (Armanentos) with the likeness of the defendant, a young white male, was the only person with defense counsel at the counsel table when defense counsel came to the bench and said, "Here is a jury waiver";

(2) that person was dressed in jeans and a shirt with no tie; this is not the courtroom attire of an attorney or cocounsel, yet that person sat in the customary location of a defendant throughout the State's case;

(3) that person was asked by the clerk to be sworn with other witnesses at the start of the trial, and defense counsel stated that that person was not going to testify; the obvious inference of this comment to the court and the clerk was that that person was the defendant because witnesses were excluded except for defendant;

(4) that person was identified as the defendant by the State's witness (the police officer), and all of the foregoing resulted in the court's comment that the record would show that defendant had been identified for the record; there was no response by defense counsel to the court's comment as to its impression and finding based on all that had occurred, and the court was misled as to the identity of defendant;

(5) that person's only apparent purpose in the courtroom in defendant's customary location with defense counsel was to raise an inference with the court that he was the defendant and this was done with full knowledge on the part of defense counsel; and

(6) while there was no express verbal misrepresentation, the totality of the conduct by defense counsel amounted to a misrepresentation by inference, and this was the basis of the finding of criminal contempt.

The contemnor's motion to reconsider, which was filed on the same date, averred that, prior to the commencement of the trial, defendant was seated in the courtroom. When the trial began, a clerical employee from the contemnor's law firm sat next to him. At no time did the contemnor make any misrepresentation to the court, the State's Attorney or anyone else that the employee was

the defendant, and the employee did not approach the bench, nor did he take any affirmative action to falsely represent his identity. At the time of the trial, seated within the courtroom were two police officers in the jury box; one black individual in the third row bench; one Hispanic individual seated in the second row bench; and two white individuals in the third row bench, one of whom was the defendant. The contemnor argued that his conduct did not embarrass, hinder or obstruct the court in its administration of justice and sought to vacate the court's order. The motion to reconsider was denied, and this timely appeal followed.

On appeal, the contemnor argues that, absent an affirmative showing of an attempt to deceive the court, it was not contemptuous for counsel to place an individual other than defendant next to him for the purpose of challenging the identification by the State's witness. He further argues that the court's findings were not sufficiently specific to support its judgment.

Criminal contempt is described as conduct that is calculated to embarrass, hinder or obstruct the court in its administration of justice or to derogate from the court's authority or dignity or bring the administration of law into disrepute. (*People v. Toomin* (1974), 18 Ill. App. 3d 824, 826, citing *People v. Miller* (1972), 51 Ill. 2d 76.) Direct criminal contempt is contemptuous conduct which occurs in the presence of the judge, making all of the elements of the offense within his own personal knowledge. (*People v. L.A.S.* (1986), 111 Ill. 2d 539, 543.) Such conduct is summarily punishable because all of the elements are before the court; consequently, the usual safeguards of procedural due process are not required. *L.A.S.*, 111 Ill. 2d at 543.

In a criminal contempt proceeding, guilt must be proved beyond a reasonable doubt. (*People v. Gorisek* (1988), 176 Ill. App. 3d 266, 268, citing *O'Leary v. Allphin* (1976), 64 Ill. 2d 500, 512.) On appeal, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Penson* (1990), 197 Ill. App. 3d 941, 944.) Direct criminal contempt is predicated on specific misconduct which interferes with the orderly administration of justice, and the order imposing punishment must state, or the record must show, the specific acts upon which it is based and such an order must be sustained upon the ground on which it was imposed or not at all. *Miller*, 51 Ill. 2d at 78.

The conduct of the contemnor must be volitional, such that it can be said to require a wilful or knowing state of mind. Intent or at least knowledge of the nature of one's act is a necessary element of contempt because contempt requires some form of constructive or actual knowledge of what conduct is forbidden, and the requisite intent in a direct contempt can be inferred from the conduct itself. (*People v. Sheahan* (1986), 150 Ill. App. 3d 572, 574.) It has been said, for example, that contemptuous conduct can be inferred from acts which common sense dictates will disturb or disrupt the court's proceedings. See *In re Watts* (1978), 66 Ill. App. 3d 971, 975.

When attorneys are charged with contempt during the course of making honest efforts to advance their clients' interests, a certain latitude is allowed regarding what is permissible conduct. Because an independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice, a stand taken by counsel in good faith and in the interest of his client should not ordinarily serve as a basis for a charge of contempt. (*People v. Kuelper* (1977), 46 Ill. App. 3d 420, 423, citing *In re Criminal Contempt of McConnell* (1962), 370 U.S. 230, 8 L. Ed. 2d 434, 82 S. Ct. 1288.) However, good-faith, vigorous advocacy cannot immunize all conduct undertaken by an attorney in behalf of a client (see *United States v. Thoreen* (9th Cir. 1981), 653 F.2d 1332, 1339, 1342), and the latitude given attorneys as vigorous advocates does not extend to deceiving or manipulating the court (see *People v. Sleezer* (1956), 10 Ill. 2d 47, 54).

Based on its facts, this case is one of first impression in this court. Neither the contemnor nor the State has submitted any cases directly determining whether it is contemptuous conduct for defense counsel to substitute another person in defendant's customary place at the counsel table with the intent to test an identification without the knowledge or permission of the court. Our research, however, has disclosed two extrajurisdictional cases, both of which have held this conduct to be contemptuous. See *Thoreen*, 653 F.2d 1332; *Miskovsky v. State ex rel. Jones* (Okla. Crim. App. 1978), 586 P.2d 1104.

In *Thoreen*, an attorney representing a client accused of violating a preliminary injunction against salmon fishing apparently hoped that the government agent who had cited the client could not identify him. Counsel decided to test the witness' identification by placing at the counsel table another person who resembled the client. The substitute was dressed in outdoor clothing while the defendant was dressed in a business suit and sat behind the rail in

a row normally reserved for the press. Defense counsel neither notified the government nor asked the court's permission to arrange this substitution. On defense counsel's motion, the court ordered all witnesses excluded from the courtroom. During the trial, counsel did not correct any mistaken impression of the court when it expressly referred to the substitute as the defendant for the record. Two government witnesses misidentified the substitute as the defendant. Following the government's case, defense counsel called the substitute as a witness and disclosed the substitution. The State was allowed to reopen its case, and defendant was identified.

On appeal, the order finding defense counsel in direct contempt was affirmed. The *Thoreen* court reasoned that defense counsel must be scrupulously candid and truthful in his representations of any matter before the court and the conduct was unethical under the rules of professional conduct then in effect in Washington State. Counsel's substitution amounted to misbehavior that obstructed justice and was inappropriate because it was done without consent, violated court custom to allow only counsel, parties, and others having the court's permission to sit forward of the rail, and was unprofessional conduct violative of the State's disciplinary provisions. In addition, counsel violated the court's order to exclude witnesses when he knew from the outset that the substitute would testify after the anticipated misidentification. The deception delayed the proceedings and impeded the court's ability to ascertain the truth.

In support of its reasoning, the *Thoreen* court referred to an early opinion of the American Bar Association committee on professional ethics that stated that the substitution of a person for the defendant in a criminal case without a court's knowledge is considered to be unethical behavior. (*Thoreen*, 653 F.2d at 1340.) The court rejected the good-faith defense and concluded that defense counsel had the requisite intent because he knew or reasonably should have known that he was exceeding the outermost limits of his proper role and was hindering rather than facilitating the search for truth. Finally, the court pointed out that there were acceptable alternative methods of testing the credibility of witnesses such as seeking the court's permission to seat two or more persons at the counsel table without identifying the defendant, having no one at counsel table, or holding an in-court lineup. *Thoreen*, 653 F.2d at 1342, 1342 n.7.

Under similar circumstances, defense counsel in *Miskovsky* substituted another person at counsel table and had his client sit in the

gallery. The reviewing court found that counsel's conduct consisted of knowingly implementing a plan of deception which would affect the witnesses, the District Attorney, and the court. The court emphasized that counsel's conduct was designed to create a mistaken assumption, that his actions indicated a disrespectful attitude for the judicial process in resorting to deception to protect his client's interests and constituted conduct directed against the dignity and authority of the court which was obstructive of the administration of justice. *Miskovsky*, 586 P.2d at 1108.

The *Miskovsky* court emphasized that the contemptuous conduct was not merely the substitution of another person for the defendant, a tactic that may have been commonly used in Oklahoma County. The gravamen of the offense was that the substitution occurred *without the knowledge of the court*. The court also pointed out that the State's professional code of responsibility prohibited lawyers from engaging in any conduct involving dishonesty, fraud, deceit or misrepresentation or from misleading judges by any artifice or false statements of facts or law. The court concluded that these ethical standards justified a court's reliance upon defense counsel to refrain from this type of misrepresentation. (*Miskovsky*, 586 P.2d at 1108-09.) We are persuaded by the reasoning in *Thoreen* and *Miskovsky* and find their rationale applicable to the case at bar.

■ Similarly, Illinois law imposes a duty upon attorneys, as officers of the court, to make full and frank disclosure of all matters and facts which the court ought to know. (*People v. Buckley* (1987), 164 Ill. App. 3d 407, 413 (attorney guilty of civil contempt for refusing to advise court regarding the calculation of the running of the term under speedy-trial requirements), citing *People v. Sleezer* (1955), 8 Ill. App. 2d 12, 22, *aff'd as modified* (1956), 10 Ill. 2d 47 (attorney guilty of criminal contempt for obstructing the administration of justice when he falsely created the impression that the defendant was without counsel and thereby delayed the proceedings).) An attorney's zeal to serve his client should never be carried to the extent of causing him to seek to accomplish his purpose by a disregard of the authority of the court or by seeking to secure from a court an order or judgment without a full and frank disclosure of all matters and facts which the court ought to know. *People ex rel. Fahey v. Burr* (1925), 316 Ill. 166, 182 (attorneys guilty of contempt of court when they intentionally sought to embarrass the court and obstruct the administration of justice by concealing facts regarding former adoption proceedings in filing second petition for writ of *habeas corpus*).

As in other jurisdictions, the Illinois Rules of Professional Conduct prohibit attorneys from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentations, engaging in conduct prejudicial to the administration of justice (134 Ill. 2d Rules 8.4(a)(4), (a)(5)), misrepresenting any material facts or law to a tribunal or participating in the creation or preservation of evidence when the lawyer knows or reasonably should know the evidence is false (134 Ill. 2d Rules 3.3(a)(1), (a)(5)). While a violation of the rules of ethical conduct does not necessarily constitute criminal contempt of court (see *People v. Wolf* (1987), 162 Ill. App. 3d 57, 60), we believe that, in this case, defense counsel knowingly exceeded the outermost limits of acceptable conduct before a tribunal when he engaged in this deceptive experiment without the court's permission.

Our trial courts have the duty and the power to control the course and conduct of trials in such a manner as will inspire respect for the law and the administration of justice, to ensure orderly, expeditious and fair trial proceedings, and to protect its processes from prejudicial influences. *Kemner v. Norfolk & Western Ry. Co.* (1985), 133 Ill. App. 3d 597, 602, *rev'd on other grounds* (1986), 112 Ill. 2d 223; *People v. Ray* (1984), 126 Ill. App. 3d 656, 664; *People ex rel. Woodward v. Oliver* (1975), 25 Ill. App. 3d 66, 76.

There are a variety of practical considerations which militate against permitting the trial court to be deceived, even temporarily, concerning the identity of persons at counsel table. An accused person has a general right to be personally present during all stages of his trial. (*People v. Bean* (1990), 137 Ill. 2d 65, 80.) It follows that it is the responsibility of the trial court to ensure the defendant's presence and to avoid unnecessarily proceeding in the defendant's absence. In discharging that responsibility, the court, in our view, should be permitted to assume the presence of the defendant at the counsel table under the circumstances present here in the absence of a contrary explanation by defense counsel. It should be unnecessary for the court to be burdened in every case by the need for specific inquiry to establish the identity of someone counsel has placed at the table.

Further, as occurred in this case, it is customary for the judge to confirm for the record that a witness has made an in-court identification of a defendant. The judge, therefore, before making his statement, must be aware of the defendant's identity and location in the courtroom in order to determine whether the witness has correctly pointed toward the defendant. In the present case, the

trial court was lured by counsel's misconduct into making an incorrect confirmation of identification.

Similarly, unless the court is aware of the defendant's location at the time of a witness' in-court identification, it may become impossible for the court to take notice of whether the defendant was even present in the room or was situated in such a location and position to be visible to the witness at the critical time of identification. In such a circumstance, it might become necessary for the court to delay the progress of the trial to hear testimony for the purpose of establishing these facts.

Here, counsel's experiment was conducted without the permission or knowledge of the court. The substitute's testimony established that the substitution was deliberate and was calculated to mislead the State and the court. The contemnor's conduct derogated from the court's authority to control its process, resulted in a delay in the proceedings, and embarrassed and otherwise hindered the court in the administration of justice.

Zealous advocacy within the bounds of the law and acceptable conduct is to be encouraged. However, for the foregoing reasons, we cannot condone the type of deception employed by the contemnor. (See *Buckley*, 164 Ill. App. 3d at 414.) We believe such a practice shows a disrespect for the authority and dignity of our courts.

■ The contemnor's second argument, that the findings of the court were not sufficiently specific, is without merit in view of the detailed statement of facts we have recited here from the record and the detailed supplemental findings of the court. (See *Miller*, 51 Ill. 2d at 78.) Any rational trier of fact could have found the elements of the offense based on the facts in the record and in the trial court's orders.

■ Although we conclude that the contemnor's conduct in deceiving the court amounted to direct criminal contempt of court, we elect to modify the penalty under Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)). In view of the fact that this is the first case in Illinois that deals with the conduct described herein, it is our opinion that the fine of $500 imposed by the circuit court should be reduced to $100. We affirm the judgment of the circuit court as to the finding of direct criminal contempt, but we reduce the fine to $100 and enter judgment to that effect.

Affirmed as modified.

WOODWARD, J., concurs.

JUSTICE GEIGER, dissenting:

I agree with the majority that the preferred procedure for defense counsel to have followed in this case would have been to advise the court, in advance of the trial, that he would not have the defendant seated at the counsel table. Nevertheless, despite counsel's belated revelation to the court, I would not find that the evidence supported a conviction of direct criminal contempt. Thus, I must respectfully dissent.

In this case, the record does not contain any court rule which required the defendant to be seated at the counsel table. Likewise, the record does not indicate any direct misrepresentation or misidentification by the defense attorney, either of the defendant or of the other person seated at the counsel table.

As the majority observe, to establish direct criminal contempt requires proof of conduct in the presence of a judge that is calculated either to embarrass, hinder, or obstruct the court in its administration of justice or to derogate from the court's authority or dignity or to bring the administration of law into disrepute. (*People v. L.A.S.* (1986), 111 Ill. 2d 539, 543; *People v. Miller* (1972), 51 Ill. 2d 76, 78; *People v. Toomin* (1974), 18 Ill. App. 3d 824, 826.) I do not condone counsel's failure to give advance notice to the court. Nevertheless, even when construing the evidence in this case to favor the prosecution, I do not find evidence from which a rational trier of fact could find beyond a reasonable doubt (see *People v. Penson* (1990), 197 Ill. App. 3d 941, 944) that, as judged from the court's immediate knowledge, counsel's intent was to embarrass, hinder, derogate, or obstruct the court in its administration of justice. See *L.A.S.*, 111 Ill. 2d at 543.

The courts of this State clearly attach significance to courtroom identification of a criminal defendant. They frequently, for example, cite to an in-court identification as support for the existence of sufficient evidence to convict. (See *People v. Ocasio* (1990), 205 Ill. App. 3d 157, 163; *People v. Zambrano* (1989), 188 Ill. App. 3d 432, 440.) In an atmosphere where a criminal defendant may be convicted with reference to the strength of his identification in court, courtroom identifications must likewise include protections against taint.

Our supreme court recently has recognized the importance of an in-court identification. There, the court found no error in the trial court's decision not to hold a hearing on suppression of an in-court identification *because* the identification's reliability was supported

by an unchallenged, independent basis. (*People v. Morgan* (1991), 142 Ill. 2d 410, 459.) Given the influence of in-court identifications, and the possibility that an arguably otherwise unreliable identification will be tainted by the defendant's placement at the counsel table, defense counsel's good-faith representation of his client should include freedom to assure that the in-court identification of a defendant is, in fact, based on the recognition of the defendant by the witness and is not merely because the witness knows where the defendant will be placed in the courtroom.

Here, with his prompt post-identification revelation to the court, counsel revealed his respect for the court's role as administrator of the law and negated any suggestion of an intent to embarrass, hinder, or obstruct. I do not find that the record supports a finding other than that counsel's action here was one taken in the interest of his client, in good faith, and with respect for the court. (See *People v. Kuelper* (1977), 46 Ill. App. 3d 420, 423.) Consequently, I would reverse the conviction.