LARRY LEE DOWDELL *v.* STATE OF INDIANA

[No. 3-977A228. Filed April 5, 1978.]

*John F. Surbeck, Jr.* of Fort Wayne, for appellant.

*Theodore L. Sendak*, Attorney General, *David Michael Wallman*, Deputy Attorney General, for appellee.

STATON, J.—Larry Lee Dowdell was tried to the court and found guilty of armed robbery. He was sentenced to the Indiana Department of Corrections for a period of ten (10) years. In his appeal, Dowdell argues that (1) in-court identification testimony was tainted by an overly sug-

gestive pre-trial identification, and (2) statements made by Dowdell should have been suppressed because they were the product of an unlawful detention.

The judgment is affirmed.

## I.

### Factual Indications

On the evening of August 26, 1976, Martha Bonham responded to a knock on her door. Dowdell was outside; he inquired as to where someone lived and then left. The following evening, at approximately 10:30 p.m., the same sequence of events transpired. However, as Bonham, eighty years of age, prepared for bed, Dowdell approached her inside the house, pointed a gun at her, threatened her, grabbed her and threw her on the bed, smothered her with a pillow, and took her radio and approximately eleven dollars. Bonham went to the emergency room of a hospital and called the police. There, she gave a description of her assailant.

When Bonham viewed about twenty-five photographs of possible suspects, she was unable to identify any individual as the man who attacked and robbed her; however, she did select two photos as "looking like" the criminal. Bonham thereafter received information from an unidentified individual to the effect that the perpetrator was named "Dowell." Bonham transmitted this information to the police who checked juvenile records and determined that "Dowdell" was probably the correct spelling. When Bonham was shown a photograph of Dowdell, she positively identified him as the person who had come to her home on two occasions and on the second occasion attacked her.

A pick-up order was issued by the Allen Superior Court, Juvenile Division, and Dowdell was picked up in Anderson, Indiana, on September 13, 1976. Because his father, who was in Fort Wayne, could not be present in Anderson until September 18, 1976, Dowdell was not formally charged or questioned until the 18th of September. During the interim period he was held in the Wood Youth Center. On the 18th of September, Dowdell was informed of his rights; he then voluntarily, and with his father present, gave a statement in which he admitted

being in Bonham's home on the night of the attack, but stated that there were other boys there as well.

Bonham stated at trial that only Dowdell had been in her house. The defense attorney attempted to extract testimony from Bonham which would tend to diminish the efficacy of her pre-trial and in-court identifications. Bonham stated that there had been three different opportunities for her to see Dowdell, that she remembered him clearly from the attack, and that Dowdell, who was seated in the courtroom, was the man who struck her and took her valuables.

## II.

### Identification

Dowdell argues that Bonham's in-court identification should have been suppressed because it was tainted by the overly suggestive pre-trial identification procedure utilized. Dowdell specifically asserts that the showing of only one photograph was impermissibly suggestive. In *Calvert v. State* (1974), 160 Ind. App. 570, 312 N.E.2d 925, the Indiana Court of Appeals held that showing one picture is not per se impermissibly suggestive. In fact, there is no set number of photographs which must be shown a witness in pre-trial identification. *See Caywood v. State* (1974), 160 Ind. App. 346, 311 N.E.2d 845.

"The test is when looking at the totality of circumstances, whether the . . . confrontation was conducted in a manner so unnecessarily suggestive and conducive to irreparable mistaken identification that it denied the defendant due process of law. . . ." *Wright v. State* (1972), 259 Ind. 197, 201, 285 N.E.2d 650, 653. The totality of circumstances reveals that Bonham was shown twenty-five photographs. She was unable to make an identification, but isolated two photographs which looked like her attacker. The request by Bonham to see a photograph of "Dowell" demonstrates her unwillingness to be influenced by the original set of photographs. Since she requested the photograph of Dowdell, we refuse to construe the compliance of the police with her request as being impermissibly suggestive. *See Auer v. State* (1972), 154 Ind. App. 164, 289 N.E.2d 321.

Even if we were to countenance the argument that the pre-trial iden-

tification was overly suggestive, there was satisfactory evidence adduced at trial to establish a sufficient independent basis for Bonham's in-court identification. *Williams v. State* (1976), 265 Ind. 190, 352 N.E.2d 733. Many questions were tendered to Bonham in court regarding her observation of Dowdell. Bonham answered that she had had ample opportunity to see Dowdell and that she "remember[ed] him very plain." She stated unequivocally that her identification was based on her memory and that Dowdell was the same man she remembered. "Yes, I'm sure it is. I know it is." Where an in-court identification is based upon the victim's observation of the defendant, any possible irregularity in the photograph identification is rendered harmless. *See Stephens v. State* (1973), 260 Ind. 326, 295 N.E.2d 622. There was no substantial likelihood of irreparable misidentification. *Johnson v. State* (1977), 265 Ind. 689, 359 N.E.2d 525.

We have examined the transcript, and we find that Dowdell's assertion that Bonham's description demonstrated confusion about her attacker's appearance is groundless. No extreme variance is evident; and, a variance is relevant only to the weight of testimony given, not to its admissibility. *Hardy v. State* (1976), 170 Ind. App. 602, 354 N.E.2d 342. No error has been demonstrated in allowing Bonham to identify Dowdell in court.

### III.

### Voluntariness of Confession

Dowdell asserts that because his statement to authorities came more than six hours after he was first detained, the voluntariness of such statement is highly suspect. IC 1971, 35-5-5-3, Ind. Ann. Stat. § 9-1636 (Burns Code Ed.) provides that confessions made after six hours are not inadmissible if the delay in bringing the defendant before a judge is found by the trial judge to be reasonable, considering the means of transportation and the distance to be traveled to the nearest available judge.

The record clearly shows that the reason Dowdell was not formally charged or questioned was because he was a minor, and the authorities wanted to have Dowdell's father present during interrogation. Dowdell's father was contacted, but he stated to the Anderson police

that he did not want to miss work; Saturday, September 18, 1976, would be the first opportunity for him to be present. It was only after Dowdell's father did appear that questioning of Dowdell began. Both Dowdell and his father signed the waiver of rights form. The trial judge examined Officer Cummins and ascertained that there was no attempt to interrogate Dowdell at any time from the period he was picked up in Anderson until Saturday. The trial court expressly found that:

> "the uncontradicted testimony before the Court is there was no attempt made to talk to the defendant until such time as his father could be present, and the Court, under those circumstances, does not feel that the statements elicited were involuntarily made, . . ."

Delay in bringing a defendant before a trial judge is only one factor in considering the admissibility of a confession given more than six hours after the initial detention; if the defendant is fully informed of his rights, a confession given more than six hours after detention is not *per se* involuntary. *See Grimes v. State* (1976), 170 Ind. App. 525, 353 N.E.2d 500; *Apple v. State* (1973), 158 Ind. App. 663, 304 N.E.2d 321. The record demonstrates the desire of the authorities to acquire a complete waiver (by delaying questioning until Dowdell's father could be present); certainly, the delay was not designed for the needs for the police for further interrogation. *See Montes v. State* (1975), 263 Ind. 390, 332 N.E.2d 786.

In reviewing the trial court's determination on the issue of voluntariness of a confession, we will neither weigh the evidence nor resolve questions of credibility; we look only to the evidence which supports the trial court's finding. *State v. Cooley* (1974), 162 Ind. App. 482, 31 N.E.2d 868. In light of the evidence in the record, we can only conclude that the confession was voluntarily made; the delay was reasonable considering the circumstances.

Finding no reversible error, we affirm the judgment.

Hoffman, J. and Lowdermilk, J., (By designation), Concur.

NOTE—Reported at 374 N.E.2d 540.