Michael J. KUCKI, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4-684 A 170.

Court of Appeals of Indiana,
Fourth District.

Oct. 17, 1985.

Rehearing Denied Nov. 22, 1985.

David Capp, Cohen & Thiros, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

Michael J. Kucki was convicted by jury of attempted theft and sentenced to three years in prison. He appeals, claiming the trial court erred by:

1) admitting certain identification evidence; and

2) refusing to admit evidence to prove a person who resembled him actually committed the crime.

Although we reverse only on the second issue, we address both issues presented as an aid to the trial court.

In the early morning hours of June 27, 1983, Randy Patton heard a loud noise in the parking lot of his apartment complex in Crown Point, Indiana. Running outside, he observed a man attempting to start a motorcycle owned by Patton's neighbor. The man stared at Patton for a moment, then fled. Patton ran in pursuit, but lost sight of the man. Patton then noticed another man sitting in a car nearby as if he were waiting for someone. Patton approached the car and spied two motorcycle tires in the back seat. Becoming suspicious, he asked the driver to step out of the car. The driver refused and drove away. Patton noted the license plate number, then went to his neighbor's apartment to report the incident. He mentioned to his neighbor he believed he recognized the man who had attempted to take the motorcycle.

Approximately three hours later, Patton identified Kucki from a police photographic lineup as the one he had observed attempting to start the motorcycle. Patton had known Kucki slightly in high school, but had not seen him in more than three years. Police traced the license number Patton had given them to a car registered to Kucki's father. At trial, Kucki's brother-in-law testified he had been driving the car home from work that night and had stopped near the apartment complex due to car trouble.

Kucki first claims the trial court erred by refusing to suppress Patton's identification testimony and by allowing Patton to identify him in court. He maintains the photographic identification was unfairly conducted and unnecessarily suggestive, in violation of his right to due process. Kucki premises this argument on his belief that Patton overheard his name in connection with the license plate number prior to the

photo lineup, either at the police station or over the police radio enroute to the police station. Recognizing the name, Kucki speculates, Patton then chose his photograph from the lineup. In support of this theory Kucki notes that prior to the lineup Patton did not mention to police that he may have recognized the perpetrator.

Certainly mentioning appellant's name in Patton's presence would have tainted the photographic array due to Patton's familiarity with Kucki. *See Wilson v. State* (1981), 275 Ind. 586, 418 N.E.2d 1150. The evidence at the suppression hearing and at trial merely demonstrated a slight possibility that such an impropriety had occurred, however. Patton himself denied overhearing the name prior to reviewing the photographs. Furthermore, the investigating officer, Sam Trapane, only admitted it was "possible" Patton could have heard the name while at the police station; he also stated he did not mention Kucki's name nor was the name broadcast to him via radio while Patton was in the patrol car.

■ Essentially, appellant asks us to accept his conjecture that his name was overheard rather than the testimony of Patton and Trapane. We are prohibited, however, from weighing evidence or judging credibility on appeal. The trial court believed Patton did not overhear Kucki's name prior to viewing the photographs and there was little evidence to the contrary. The court did not err by refusing to suppress Patton's identification testimony.

■ The trial court also committed no error by allowing Patton to identify Kucki in court. Since we find the identification procedure was fairly conducted, we need not decide whether an independent basis exists for Patton's in-court identification of Kucki. *Norris v. State* (1976), 265 Ind. 508, 356 N.E.2d 204; *see also Dowdell v. State* (1978), 176 Ind.App. 84, 374 N.E.2d 540. Nevertheless, facts supporting a determination that the in-court identification was made upon an independent basis are readily apparent from the record: Patton observed the suspect for several moments during the attempted theft; the area was

well-lighted; the description Patton gave police accurately described Kucki's appearance; and, Patton's identification was made only three hours after the crime. *See Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Gentry v. State* (1984), Ind., 471 N.E.2d 263.

Finally, appellant claims the trial court erred by refusing to admit evidence that a person resembling him was actually responsible for the attempted theft. At trial, Kucki's defense rested upon his claims of alibi and mistaken identity. His alibi defense was admittedly weak: his mother testified he was home in bed, but the circumstances were such that he could easily have left the house without his family's knowledge. His defense of mistaken identity was premised on his belief that a person named Chris Hewitt, who resembled him, was a suspect in a series of burglaries and thefts in the area, and was the one Patton had seen attempting to take the motorcycle. In support of this defense he sought to introduce a newspaper article which indicated that shortly after this crime occurred police were seeking Hewitt in connection with a series of thefts and burglaries in the Crown Point area. A photograph of Hewitt accompanied the article which, according to Kucki, bore a striking resemblance to himself. Kucki also sought to elicit testimony from Officer Trapane that police were looking for Hewitt around the time the instant crime occurred and that they believed Hewitt was in the Crown Point area at that time.

■ The trial court excluded the newspaper article on the basis that it was hearsay. Hearsay evidence is defined as any out-of-court statement repeated in court and offered to prove the truth of the matter asserted therein. *See Samuels v. State* (1978), 267 Ind. 676, 372 N.E.2d 1186. The objection to such evidence is the statement's value rests upon the credibility of the declarant who is not in court and cannot be subjected to cross-examination. *Jethroe v. State* (1974), 262 Ind. 505, 319 N.E.2d 133. The article Kucki offered as evidence reported that police were seeking

Hewitt in connection with a series of thefts and burglaries in the area. Kucki offered the article to prove this fact, thus the court would have been correct to exclude it as hearsay if only offered to prove the facts asserted. Kucki also tendered the article for another reason—to prove both the existence of a person named Chris Hewitt and that such an article appeared in the newspaper. When offered for this purpose, the article was not hearsay and the trial court erred in excluding it.[1]

The court also excluded the article and other evidence relating to Kucki's defense of misidentification on the basis that such evidence was irrelevant. The court believed Hewitt was not in the Crown Point area at the time of the crime, since he was supposed to have checked into a drug rehabilitation program in Michigan, although the evidence was conflicting on this point.

■ The fact that Hewitt may have been in another state at the time of the crime goes to the weight of the evidence rather than its admissibility. The admissibility of such evidence depends only upon its relevance, determined by whether it has any tendency to prove or disprove a material fact. *Badelle v. State* (1982), Ind., 434 N.E.2d 872. Identity was a crucial issue in this case as there was little evidence against Kucki other than Patton's identification testimony. Consequently, evidence tending to prove that a man who resembled Kucki could have committed the crime was relevant to the issue of identity.

The courts have generally applied a stricter standard of relevance to evidence tending to show a third party committed the crime, however. As we explained in *Hinds v. State* (1984), Ind.App., 469 N.E.2d 31, 38:

> To be admissible, such evidence concerning a third party must do more than cast suspicion on him or raise a conjectural inference that he committed the crime; such evidence must directly connect the third party to the crime charged. *Brown*

*v. State*, (1981) [275] Ind. [227], 416 N.E.2d 828. The rationale for this rule is apparently that the probative value of evidence implicating a third party only tangentially is outweighed by the risk that, under a less restrictive rule, a defendant could confuse the jury with a plethora of evidence suggesting—but not really showing—that any number of other persons might have committed the crime charged.

■ To directly connect a third party to the crime, the defendant usually must demonstrate a striking similarity between the charged crime and another crime the third party committed, the inference being that the third party committed both crimes. *See, e.g. Stout v. State* (1910), 174 Ind. 395, 92 N.E. 161; *Fortson v. State* (1978), 269 Ind. 161, 379 N.E.2d 147. When, as in this case, the connection is a similarity in appearance of the defendant and a third party, courts have been lenient in admitting such evidence. *See, e.g. Laureano v. Harris*, 500 F.Supp. 668 (S.D.N.Y.1980) (error to exclude evidence that another man who resembled defendant had been arrested for similar "pattern" rapes); *Holt v. United States*, 342 F.2d 163 (5th Cir.1965) (error to exclude evidence that defendant had been mistakenly identified as another man who had committed similar crimes); *United States v. Robinson*, 544 F.2d 110 (2nd Cir. 1976), *cert. denied* 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1978) (error to exclude testimony of correctional officer that person in bank surveillance photograph was not defendant, but another known bank robber); *Commonwealth v. Jewett* (1984), 392 Mass. 558, 467 N.E.2d 155 (error to exclude evidence that defendant was mistakenly identified as perpetrator by the victim of a similar crime); *People v. Flowers* (Colo.1982), 644 P.2d 916 (error to exclude evidence that another man arrested for similar crime and that the composite photograph resembled defendant). The leniency in admitting evidence of mistaken identity

---

1. Appellant did not attempt to introduce Hewitt's photograph, devoid of the accompanying article and caption, into evidence. The photo-

graph itself is not hearsay, but demonstrative evidence. *Bergner v. State* (1979), Ind.App., 397 N.E.2d 1012.

may be partly due to the courts' recognition that while eyewitness identifications are frequently unreliable, juries accord them considerable weight in determining a defendant's guilt or innocence. *See United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967); *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir. 1972).

We have found no Indiana decisions addressing the issue of mistaken identity based upon a striking physical similarity between the defendant and a third party. We believe the reasoning of the cases cited above, however, to be sound and persuasive. Similar to the case at bar, these cases involved criminal prosecutions which placed great reliance upon eyewitness testimony due to the paucity of other evidence incriminating the defendant. The courts in these cases favored admitting evidence of a look-alike suspected of committing similar crimes where identity was a crucial issue, and the defendant's evidence of similarity in appearance was direct and would not confuse the issues or mislead the jury.

In the instant case the evidence of mistaken identity Kucki sought to introduce was not only relevant to the issue of identity, but was also essential to his defense. Moreover, there was little danger this evidence would confuse the issues or mislead the jury, a basis for which otherwise relevant evidence may be excluded. *See Parrish v. State* (1984), Ind.App., 459 N.E.2d 391. Although we recognize a trial court has broad discretion in determining the relevancy of evidence, *Armstrong v. State* (1982), Ind., 429 N.E.2d 647, this de-

termination must be balanced against a criminal defendant's right to present evidence in his defense, as guaranteed by the sixth and fourteenth amendments to the Constitution. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *see also Perry v. Rushen,* 713 F.2d 1447 (9th Cir.1983). We may set aside the trial court's determination of the relevancy of certain evidence if justice so requires. *See Spears v. Aylor* (1974), 162 Ind.App. 390, 319 N.E.2d 639.

In this case the trial court's decision on the relevancy of appellant's mistaken identity evidence effectively prevented him from pursuing that defense. Moreover, the evidence implicating him in the crime was meager, the state's case resting solely on Patton's eyewitness testimony. Since identity was crucial in this case it seems fundamentally unfair to prohibit Kucki from defending on the theory that Patton mistook him for another thief in the area who resembled him. In these circumstances, we find the trial court abused its discretion in excluding this evidence as irrelevant.

For these reasons, we reverse and remand for a new trial in accordance with this opinion.

MILLER and CONOVER, JJ., concur.