**Alex KINER, Appellant–Defendant**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 46A03–9401–CR–21.**

Court of Appeals of Indiana,
Third District.

Dec. 8, 1994.

Rehearing Denied March 2, 1995.

Scott L. King, King & Meyer, Gary, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

GARRARD, Judge.

Alex Kiner appeals his conviction for robbery, a class B felony, arguing reversible error in the trial court's exclusion of mistaken identity evidence and failure to notify the defendant of the jury's request to view evidence during deliberations. We affirm.

## FACTS

The facts most favorable to the judgment reveal that on February 26, 1993, Lynn Gumms was working at the Family Express store in Michigan City, Indiana. At approximately 9:15 p.m. a man wearing a dark green coat, with the hood pulled over his head, entered the store. Gumms testified that the man had a beard and mustache, a wide nose, an acne scar and large eyes. The individual requested a pack of cigarettes and, after Gumms rang the item up, told her that he wanted the money in the cash register. Gumms gave the individual approximately $30.00 to $40.00. The man then pulled out a knife and cut the telephone cord. After warning Gumms not to say anything, he left the store. A video camera inside the store recorded the robbery.

The police arrived on the scene · shortly thereafter and spoke with both Gumms and Tina Morton, who had been on the telephone outside the store and saw the robber enter and exit the store. That night Detective Donald Webb viewed the videotape and concluded that the robber looked like Alex Kiner, a man with whom Webb had been familiar for approximately fourteen years.

The next day Webb went to the Family Express store with a mug shot book, which he asked Gumms to review. Gumms selected Kiner's photograph from the book and indicated that she was 100% certain that he was the robber. After Gumms looked at the book Morton came into the store, and Webb asked her to review the book as well. Morton also identified Kiner as the robber, stating that she was 99% certain he was the perpetrator. At trial, both women identified Kiner as the robber.

On August 31, 1993, a jury convicted Kiner of robbery, a class B felony. Kiner was sentenced to ten years in prison, and he has timely appealed his conviction.

## DISCUSSION

Kiner raises the following two issues for our review:

I. Whether the trial court erred in excluding evidence that a witness misidentified Kiner;

II. Whether the trial court erred in failing to notify Kiner of the jury's request to review certain evidence during deliberations.

## ISSUE I

During cross-examination of Gumms, defense counsel showed her a photograph, defendant's exhibit "B", and asked her the following questions:

Q I'm going to show you what's been marked as Defendant's "B,["] which is a picture of Alex Kiner when he had shorter hair. If you had seen that picture, would you have picked it out? (Indicating.)

A Can I do the same thing I did with the mug book? With the photo book?

Q I asked you a question. With Alex Kiner with shorter hair, would you have picked out that picture? (Indicating.)

A Yes, sir.

Q That's him?

A Yes, sir.

Q No doubt?

A No doubt.

(R. 116–117). It was subsequently revealed that the photograph was in fact not of Kiner but of an individual named Lacey Gay.[1]

After direct examination of the prosecution's next witness, the prosecutor objected to defense counsel's method of questioning the witness on the basis that he had misrepresented the nature of the photograph to the witness. The trial court admonished the jury not to consider any reference made to the photograph during the cross-examination of Gumms and did not admit the photograph into evidence.

Evidence is relevant when it throws or tends to throw light on the guilt or innocence of an accused even though its tendency to do so may be slight. *Williams v. State* (1992), Ind.App., 600 N.E.2d 962, 965. Evidence which would otherwise be admissible may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *Downs v. State* (1985), Ind., 482 N.E.2d 716, 718; *see also* Ind.Evidence Rule 403. It is well settled, however, that rulings on the relevancy of evidence are entrusted to the broad discretion of the trial judge. *Williams,* 600 N.E.2d at 965.

Certainly, evidence that a witness has mistakenly identified another individual as the defendant is relevant, particularly given the suspect nature of identification testimony:

Centuries of experience in the administration of criminal justice have shown that convictions based solely on testimony that identifies a defendant previously unknown to the witness is highly suspect. Of all the various kinds of evidence it is the least reliable, especially where unsupported by corroborating evidence.

*Jackson v. Fogg* (1978), 2nd Cir., 589 F.2d 108, 112. Here, the identification evidence against Kiner was crucial, as there was virtually no other evidence connecting Kiner to the robbery. However, Gumms misidentified the photograph only after defense counsel specifically represented to Gumms that the photograph was a picture of Kiner. We have long held that, when determining the admissibility of an out-of-court identification, the evidence will not be admitted if the identification procedure, under the totality of circumstances, was impermissibly and unnecessarily suggestive such that it gave rise to a very substantial likelihood of misidentification. *Austin v. State* (1992), Ind.App., 603 N.E.2d 169, 171, *trans. denied.* Thus, just as we will not permit identification evidence from the prosecution which resulted from an impermissibly suggestive procedure, we similarly refuse to allow a defendant to misrepresent facts to a witness in order to secure a misidentification.

We observe a similarity between the situation before us and those cases where, in attempting to provoke a witness to misidentify a defendant, defense attorneys have engaged in the practice of secretly substituting another person in the defendant's customary place at counsel's table. Such conduct has been found to warrant a finding of contempt. *U.S. v. Thoreen* (1981), 9th Cir., 653 F.2d 1332, *cert. denied,* (1982), 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648; *People v. Simac* (1992), 236 Ill.App.3d 1096, 177 Ill.Dec. 316, 603 N.E.2d 97, 101, *aff'd,* (1994), 161 Ill.2d 297, 204 Ill.Dec. 192, 641 N.E.2d 416; *Miskovsky v. State* (1978), Okla.App., 586 P.2d 1104; *see also* Underwood & Fortune, Trial Ethics § 11.8.

---

1. The State initially argues that Kiner has waived any claim of error due to his failure to properly include the photograph in the record on appeal. According to the affidavit of the court reporter for LaPorte Superior Court # 1, the delay in obtaining a certified copy of the photograph was due to the fact that the court reporter, not the court clerk, maintains possession of exhibits, and the court reporter had not been aware of the order to supplement the record until after the deadline expired. As our ability to review the issue presented has not been impaired, we shall address the merits of Kiner's allegations.

Kiner's counsel maintained at trial that he was merely engaging in the "art of cross-examination." (R. 138). An attorney is certainly to be commended for zealously defending his or her client, and such advocacy may properly include impeaching or confusing a witness, even if counsel thinks the witness is truthful. *Thoreen,* 653 F.2d at 1339. Nevertheless, "the latitude given attorneys as vigorous advocates does not extend to deceiving or manipulating the court." *Simac,* 603 N.E.2d at 101 (citation omitted). Counsel's misrepresentation of the photograph in this case to the witness, the prosecution, and the court constitutes the same type of deceptive practice condemned in the above-cited cases.

Indeed, counsel's conduct also raises concerns under Rule 3.3 of the Rules of Professional Conduct: "A lawyer shall not knowingly make a false statement of material fact or law to a tribunal...." Ind.Professional Conduct Rule 3.3(a)(1). We have previously stated that, when counsel on cross-examination poses questions asserting the existence of facts not in evidence, counsel ethically represents to the court and the parties that, if these facts are disputed, evidence of their existence will be produced. *Guardianship of Carrico v. Bennett* (1974) 162 Ind.App. 330, 319 N.E.2d 625, 628. Kiner's counsel stated to the courtroom that the picture he showed to Gumms was a picture of Kiner, knowing in fact that it was not. This affirmative misrepresentation of fact constitutes behavior that the courts cannot condone. *See also U.S. v. Harris* (1976), 7th Cir., 542 F.2d 1283, 1307, *cert. denied,* (1977), 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (it is improper for the government to ask a question which implies a factual predicate which the examiner knows cannot be supported by evidence).

We emphasize that defense counsel is not to be prevented from engaging in a true test of a witness's identification. However, counsel may not engage in blatant misrepresentation and deceit to achieve this goal. In *Thoreen,* the court proposed that, if identification is at issue, an attorney could test a witness's credibility by notifying the court and opposing counsel of the attorney's intentions and by seeking the court's permission to (1) seat two or more persons at counsel table without identifying the defendant; (2) have no one at counsel table; (3) hold an in-court lineup. *Id.* at 1342 n. 7 (citations omitted). These suggestions offer practical alternatives to the type of conduct before us.

Thus, we conclude that the trial court properly admonished the jury to disregard the testimony regarding the misidentification of a photograph of Gay as a photograph of the defendant, as it was procured as a result of defense counsel's misrepresentation. Kiner subsequently attempted to introduce the photograph during the cross-examination of Detective Webb, arguing that the photograph was admissible under *Kucki v. State* (1985), Ind.App., 483 N.E.2d 788, *reh'g denied.*

In *Kucki,* the trial court refused to admit evidence relating to a claim of mistaken identity in the form of a newspaper article with a picture of a man resembling the defendant whom police were investigating in a series of burglaries and thefts in the area. Kucki, on trial for attempted theft, rested his defense on claims of alibi and mistaken identity. On appeal, the court concluded that evidence tending to prove that a man who resembled Kucki could have committed the crime was relevant to the issue of identity and should have been admitted. *Id.* at 791.

However, in the case before us Kiner failed to present any evidence linking Gay to this robbery or similar crimes in the area. The only evidence of any prior criminal activity by Gay was testimony that he may have been involved in a car theft in Chicago in 1973. While Kiner testified that Gay borrowed his car the night of the robbery, Gay, although acknowledging that he had borrowed Kiner's car before, could not recall the exact date. Finally, Detective Webb stated that the police had talked with Gay regarding the robbery, but the Department took no further action. Given the absence of any evidence connecting Gay to the commission of this crime or similar crimes in the area, we conclude that the trial court properly exercised its discretion in excluding the photograph.

## ISSUE II

Kiner next argues that the trial court committed reversible error by failing to notify him of the jury's request to view three photographs of the robbery, taken from the store's videotape, after retiring to deliberate.

Approximately one hour after beginning deliberations, the jury sent the following note to the judge: "We would like to see the three evidence pictures placed into evidence." (R. 4). The trial judge sent the following response: "You will have to rely on your memory. Judge Chapala." (R. 4). The record does not indicate whether Kiner, his counsel or the prosecutor were notified or present during these proceedings. Approximately thirty minutes later the jury returned a guilty verdict.

 Both the United States Constitution and the Indiana Constitution guarantee a defendant the right to be present at all critical stages of a criminal proceeding. U.S. Const. amend. VI; Ind. Const. art. 1, § 13. When jurors request additional guidance from the court, the proper procedure is for the judge to notify the parties so they may be present in court before the judge communicates with the jury, and the parties should be informed of the judge's proposed response to the jury. *Grey v. State* (1990), Ind., 553 N.E.2d 1196, 1198, *reh'g denied.* An inference of prejudice arises from an *ex parte* communication and this inference creates a rebuttable presumption that error has been committed. *Martin v. State* (1989), Ind., 535 N.E.2d 493, 497, *reh'g denied.* However, when the trial judge merely responds to a jury question by denying its request, any inference of prejudice is rebutted and any error is deemed harmless. *Id.*

 Ind.Code § 34–1–21–6 further delineates the procedure to be followed when the jury requests additional information after retiring to deliberate:

After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

I.C. § 34–1–21–6. This statute has been construed to require the judge, where the jury expresses disagreement regarding testimony, to read to the jury any properly admitted testimony or documentary evidence. *Grayson v. State* (1992), Ind.App., 593 N.E.2d 1200, 1206; *Douglas v. State* (1982), Ind., 441 N.E.2d 957, 962, citing *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188. The judge is also to respond to a jury's request which seeks clarification on legal issues. *Grayson,* 593 N.E.2d 1200. However, the statute has not been construed to mean that a failure to so inform the jury is reversible error per se. *Smith v. State* (1979), 270 Ind. 579, 388 N.E.2d 484, 485. The trial court must exercise discretion in determining whether certain questions of the jury should be answered. *Id.* When I.C. § 34–1–21–6 is inapplicable, the decision to replay testimony is solely within the sound discretion of the trial court. *Grayson,* 593 N.E.2d at 1206 (citations omitted).

On appeal, Kiner contends that he was never informed of the jury's request to view the photographs; however, it is not clear whether he also maintains that his counsel was not advised of the request. In the record, the only indication of these events appears in the court's docket entry, which does not state whether or not the parties were informed of the jury's request.

 Any error alleged but not disclosed by the record will not be a proper subject for review. *Turner v. State* (1987), Ind., 508 N.E.2d 541, 543. The record before us is similar to that in *Moffatt v. State* (1989), Ind., 542 N.E.2d 971, where the only record of *ex parte* communication between the jury and the judge was a court docket entry which contained the jury's request to view exhibits but did not indicate whether the defendant or counsel were present. The supreme court noted that the appellant assumed in his brief that the *ex parte* communication occurred and that his trial counsel had been unaware of the communication. However, the court went on to address the defendant's claim, concluding that, since the court denied the jury's request to view the exhibits, any infer-

ence of prejudice was rebutted and any error was harmless. *Id.* at 974–75 (citations omitted).

■■■ We do not believe that the record before us is sufficient to establish that Kiner and his counsel were not notified or present during the communication between the judge and the jury. However, even assuming that the court failed to advise Kiner and his counsel of the jury's request, any error was harmless as the denial of the request rebutted any inference of prejudice. *Id.*[2]

Kiner urges us to apply the reasoning of *Brownlee v. State* (1990), Ind.App., 555 N.E.2d 505. In *Brownlee* the jury sent a note to the judge stating that two of the jurors were unable to hear the tape of an alibi witness's testimony. Without informing or consulting with the parties, the trial court replied "No." On appeal the court determined that the note did not reveal disagreement among the jurors on its face. However, as the defendant had not been informed of the jury's request, the court concluded that he had been denied the opportunity to request clarification and determine if in fact disagreement existed which would have required the testimony to be reread, resulting in reversal and remand for a new trial. *Brownlee,* 555 N.E.2d at 508. The court also addressed the State's contention that any *ex parte* communication between the judge and the jury is harmless error when the judge simply refuses the jury's request. The court noted that in the case cited by the State, *Marsillett v. State* (1986), Ind., 495 N.E.2d 699, the defendant's counsel was present in court each time the jury made a request and was therefore able to represent the defendant's interests. *Brownlee,* 555 N.E.2d at 508 n. 3. As that was not the case in *Brownlee,* the court concluded that the harmless error rule was inapplicable.

However, the supreme court did employ the harmless error rule in *Moffatt.* In that case, the jury requested to hear certain instructions and to see the State's exhibits again, and the court reread the final instructions but refused to allow the jury to view the exhibits. The supreme court, assuming that the communication had occurred without the defendant or counsel present, held that the denial of the jury's request to review the exhibits rebutted any inference of prejudice, rendering any error harmless. *Moffatt,* 542 N.E.2d at 974–75. In *Averhart v. State* (1984), Ind., 470 N.E.2d 666, *cert. denied,* (1985), 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323, the trial court waited until after the jury had arrived at a verdict to inform the defendant and counsel of the court's refusal of the jury's request for clarification of instructions. The court's action was deemed harmless error, as refusal of the request rebutted any inference of prejudice. In additional cases, the supreme court has applied the harmless error rule upon refusal of a jury's request without discussing whether the defendant's counsel was present. *See Grey,* 553 N.E.2d 1196 (judge's response that he could not answer jury's question as to whether certain words were contained in defendant's confessions, made outside the presence of the defendant, was harmless error); *Martin,* 535 N.E.2d 493 (although defendant was not present when jury requested the legal definition of "sudden heat," the denial of the request rebutted the inference of prejudice, rendering any error harmless).

We do note that none of these cases addressed the issues presented under I.C. § 34–1–21–6, as did the *Brownlee* court. However, the court in *Brownlee* distinguished itself from the harmless error rule expressed in *Marsillett* based on the court's statement therein that the defendant's counsel was present to protect the defendant's interests, not on the basis of the statute. *See Brownlee,* 555 N.E.2d at 508 n. 3. The nature of the conduct is the same, whether or

---

2. We further observe that I.C. § 34–1–21–6 may not even be applicable to this case. In *Grayson v. State* (1992), Ind.App., 593 N.E.2d 1200, the jury sent a note to the judge saying it needed to review the testimony of one witness. The court on appeal concluded that the statute was not applicable because the jury's note did not indicate any disagreement and did not ask to be

informed on any point of law. Judge Baker stated that the statute is only implicated when "the jury manifests disagreement about the testimony or seeks clarification on legal issues.... We refuse Grayson's implicit request to require trial courts to question juries about whether they are in disagreement when there is no indication that they are." *Id.* at 1206.

not it is addressed under the statute. We further note that our supreme court has held that the failure to inform the jury under the statute is not reversible error per se. *Smith*, 388 N.E.2d at 485. Thus, while we appreciate the basic reasoning underlying *Brownlee*, Kiner's failure to adequately present error in the record, coupled with precedent from our supreme court indicating the court's denial of a jury's request renders any error harmless, convinces us that no reversible error occurred here.

Judgment affirmed.

HOFFMAN and RUCKER, JJ., concur.