**Julian PETTRIE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9812–CR–952.

Court of Appeals of Indiana.

July 13, 1999.

Robert V. Clutter, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Appellant–Defendant, Julian Pettrie, was convicted by a jury of one count of robbery[1] and four counts of confinement,[2] all Class B felonies, and one count of carrying a handgun without a license,[3] a Class A misdemeanor. The sole issue raised on appeal is whether the trial court erred in replaying the testimony of three witnesses and a 911 call in response to the jury's request after the jury had begun to deliberate.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment establish that on the morning of November 24, 1997, Mark Dych was on his way to work and backing his car out of the garage of the house he rented with three other roommates when he was accosted by four men who were armed and masked. One of the men put a gun to Dych's head and ordered him to pull his car back into the garage. The four accomplices then forced Dych to let them inside the house.

Once inside the residence, the men ordered Dych and Jennifer Loholdt, a frequent visitor of the home, to lie on the floor. The intruders then awakened two of Dych's roommates, Darren Cawley and Craig Wilson, demanding money and marijuana. Wilson told the men that all he had was a dollar and some change. Cawley and Wilson were subsequently taken to the living room and forced to lie on the floor, at which point both were struck in the head. When the intruders again demanded money and marijuana, Cawley told them he had money in his bedroom and marijuana in a locked room in the basement. The men took Cawley to his room where he relinquished sixty dollars, and then to the basement where they retrieved some marijuana.

The last roommate, Darren Block, was sleeping in an upstairs bedroom undetected when he was awakened by the disturbance downstairs. He crawled out of his bedroom window onto the roof of the home and called 911. Officers Thomas Goodin, Jeffrey Krider, Ned Popovich, and James Fiscus of the Indianapolis Police Department arrived on the scene shortly thereafter and surrounded the residence. Officer Krider, who was stationed near the front of the house, observed an individual with a gun in his hand attempt to exit through the front door. When Officer Krider identified himself as a police officer, the person retreated back inside. Eventually, four men exited from the back door of the house and were arrested. One of the four intruders was later identified as Julian Pettrie.

On November 25, 1997, Pettrie was charged in a six-count information with one count of robbery, four counts of confinement, and one count of carrying a handgun without a license. After a three-day trial which commenced on August 24, 1998, the jury began deliberating. During deliberations, the jury sent the trial judge a note which read, "[W]e would like to see the testimony of Ned Popovich, Thomas Goodin, James Fiscus, and then we would like to hear the 911 tape or written transcript of the tape." *Record* at 694. The jurors were then called back into open court, and with the deputy prosecutor, Pettrie, and his counsel present, the following colloquy ensued:

"THE COURT: Ladies and gentlemen, you've sent a question out to the Court. I need to know who the foreperson is. All right, Mr.—is it—

MR. GILDEA: Mr. Gildea.

THE COURT: Mr. Gildea, you have requested that the jury would like to see the testimony of Ned Popovich, Thomas Goodin, James Fiscus, and would like to hear the tape of the 911 written testimony. I need to ask you a couple of specific questions. Please answer the questions that I'm asking. First of all, is there a conflict among the jury as to what the testimony of Mr. Popovich is? Is there a dispute as to what that testimony was?

---

1.  *See* IC 35–42–5–1.

2.  *See* IC 35–42–3–3.

3.  *See* IC 35–47–2–1.

MR. GILDEA: No.

THE COURT: Okay. Is there a dispute as to what the testimony of Thomas Goodin was?

MR. GILDEA: Dispute?

THE COURT: It's a disagreement. A disagreement as to what the testimony was.

MR. GILDEA: There is information that we were unclear about that we would like to know.

THE COURT: Okay. I guess what I need to know is does that mean that one person says, I think the testimony was A, and the other testimony, the other person says, I think the testimony was B?

MR. GILDEA: Okay. Yes.

THE COURT: Is that the situation you find yourself in?

MR. GILDEA: Yes.

THE COURT: Is that with respect to Mr. Goodin?

MR. GILDEA: Yes.

THE COURT: Does the same apply to Mr. Popovich, or not?

MR. GILDEA: Yes.

THE COURT: And does the same apply to Mr. Fiscus' testimony?

MR. GILDEA: Yes.

THE COURT: So there is a dispute amongst yourselves as to what the actual testimony was.

MR. GILDEA: Yes.

THE COURT: Okay. I have the same question with respect to the 911 tape. Do you have a dispute as to what that tape was, what the contents of the tape was?

MR. GILDEA: What we heard, yes.

THE COURT: So some of you think you heard one thing, and some of you think you heard something else, is that a fair characterization?

MR GILDEA: Correct.

THE COURT: Okay. Under those circumstances I believe that the law requires

that I replay that testimony for you, and hear, to replay that evidence for you." *Record* at 696–98.

Over Pettrie's objection, the trial court replayed the testimony of the three police officers and the 911 call. Thereafter, the jury returned a verdict of guilty on all counts, and Pettrie was sentenced accordingly. He now appeals.

## DISCUSSION AND DECISION

Pettrie argues that because the jury's note did not explicitly state there was a disagreement as to the testimony, the trial judge should have responded by advising the jury that no further information could be provided and ordering the jury to continue deliberating. Put another way, Pettrie contends that because there was no manifestation of juror disagreement on the face of the note, the terms of IC 34–36–1–6[4] did not apply, and as such, the court was bound to deny the jury's request. We reject Pettrie's interpretation of the statute.

IC 34–36–1–6 delineates the procedure to be followed when the jury requests additional information after deliberations have commenced, and provides:

"If, after the jury retires for deliberation:

(1) *there is a disagreement among the jurors as to any part of the testimony;* or

(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into the court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties."

IC 34–36–1–6 (emphasis added). This statute has been construed to require a judge, where the jury expresses disagreement regarding testimony, to read to the jury any properly admitted testimony or documentary evidence. *Kiner v. State*, 643 N.E.2d 950, 955 (Ind.Ct.App.1994) (citing *Grayson v. State*, 593 N.E.2d 1200, 1206 (Ind.Ct.App. 1992)). The plain meaning of IC 34–36–1–6 implies that *unless* the jury manifests dis-

---

4. IC 34–36–1–6 replaced IC 34–1–21–6 effective July 1998. No substantive changes were made.

agreement about the testimony, the trial court is under no duty to respond to the jury's request. *Dowdy v. State,* 672 N.E.2d 948, 954 (Ind.Ct.App.1996) (citing *Grayson,* 593 N.E.2d at 1206), *trans. denied.*

▪ Contrary to Pettrie's assertion, this statutory provision does not mandate that the trial court automatically and mechanically refuse to provide the jury with information every time a "disagreement ... as to any part of the testimony" is *not* found. Rather, if the trial court determines that the question posed or the information requested does not relate to a disagreement among the jurors, it has the discretion within the meaning of IC 34–36–1–6 to provide the requested information. *Foster v. State,* 698 N.E.2d 1166, 1170 (Ind.1998) (citing *Smith v. State,* 270 Ind. 579, 580, 388 N.E.2d 484, 485 (1979)); *see also Sturma v. State,* 683 N.E.2d 606, 609 (Ind.Ct.App.1997); *Kiner,* 643 N.E.2d at 955; *Grayson,* 593 N.E.2d at 1206. When the mandatory language of IC 34–36–1–6 does not apply, the decision to replay testimony is within the sound discretion of the trial court. *Id.*

▪ We agree with Pettrie's observation that the jury's note requesting that the police officers' testimony and the 911 call be replayed did not, on its face, demonstrate "an express showing of disagreement among the jurors." *Gibson v. State,* 702 N.E.2d 707, 709 (Ind.1998) (citing *Bouye v. State,* 699 N.E.2d 620, 627 (Ind.1998) (approving line of Court of Appeals cases holding that protections of IC 34–36–1–6 are only triggered upon express showing of disagreement among jurors, and not "whenever a jury requests to review any part of the testimony")). Nonetheless, the trial judge could, upon receiving the jury's note and in her discretion, question the jury further to determine whether the jurors had a disagreement as to the content of the requested testimony. *See Cade v. State,* 590 N.E.2d 624, 627 (Ind.Ct. App.1992); *Counceller v. State,* 466 N.E.2d 456, 461 (Ind.1984), *overruled on other grounds, Wright v. State,* 658 N.E.2d 563 (Ind.1995).

▪ Here, the judge did not call undue emphasis to any part of the testimony nor did she suggest disagreement to the jury.

*See Counceller,* 466 N.E.2d at 461. Instead, she merely questioned the jury foreman, in open court, to ascertain whether the jury's request was the result of a true disagreement between the jurors or simply an inquiry to revisit the evidence. Upon learning from the foreman that a disagreement did exist concerning the content of the police officers' testimony and the 911 call, the judge proceeded to replay only that evidence, in the presence of the deputy prosecutor, Pettrie, and his counsel, and in full compliance with the requirements of IC 34–36–1–6. We find no error in the procedure used by the trial judge in this case, and her decision to replay the testimony at issue was not an abuse of discretion.

Affirmed.

DARDEN, J., and BROOK, J., concur.