Sonny WRAY, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 10A01–9902–PC–51.

Court of Appeals of Indiana.

Dec. 17, 1999.

Transfer Denied Feb. 16, 2000.

Susan K. Carpenter, Public Defender of Indiana, C. Brent Martin, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Sonny Wray appeals the denial of his petition for post-conviction relief. We affirm.

### ISSUES

Wray presents four issues for our review which we consolidate and restate as:

1. Whether the trial court erred when it failed to notify Wray or his trial counsel of a note from the jury.

2. Whether Wray received ineffective assistance of appellate counsel when his counsel failed to include necessary citations to the record to support his direct appeal.

3. Whether the trial court erred when it allowed the jury to continue to deliberate after it found that further deliberations would not result in a verdict.

### FACTS AND PROCEDURAL HISTORY

The facts as recited by our supreme court on direct appeal are as follows:

At approximately 3:30 a.m. on March 15, 1987, Ruby Strange heard a loud pounding on a door. Strange lived in a trailer park and was a neighbor to Bob Bayens and the appellant's uncle, with whom appellant was living. The second time she heard the sound she got out of bed and looked out the window. She saw appellant getting into Bayens' car, which was parked next to Bayens' trailer. Appellant then drove Bayens' car to his uncle's trailer, went inside, returned to the car and drove it back to Bayens' trailer. Then Strange saw appellant drive the car out of the trailer park. Approximately twenty minutes later, appellant returned the car to its parking space near Bayens' trailer.

Near noon on March 16, 1987, Strange heard a door slam and saw appellant in Bayens' car. He drove the car in the direction of the school. Later she saw him running down the street away from the school.

Bayens' brother, David Bayens, testified that appellant's uncle called him on March 18, 1987, and told him that Bob Bayens' car had been in the schoolyard for three days and that the Stranges had called the police. David Bayens and police entered his brother's trailer and found him on the floor, dead. The autopsy revealed that Bayens died from stab wounds to his neck, which the coroner estimated occurred sometime between 6:30 p.m. on March 15, 1987, and 6:30 p.m. on March 16, 1987.

Police found Bayens' car in the school parking lot. Inside the trunk, police found some stereo equipment, a hair dryer with its cord cut, two sets of keys, two checkbooks, and a bloody brown shoe. Police found in a field the shoe's match, which also had blood on it, and bloody socks. The shoes were the same type which appellant stated he had owned but had thrown away because they had torn. The hair dryer cord was found under the body of the victim. One of the checkbooks found in the car was bloodstained. Six checks, which were missing from one of the checkbooks, were found wadded up in Bayens' trailer. One of the checks was written paid to the order of "Mike" for fifty dollars and had Bayens' name as the drawer, but the name was misspelled.

In his statement to police, appellant denied having any knowledge of Bayens' death, but he admitted that he did owe Bayens $50. He also stated Bob Bayens was a homosexual. A pubic hair found under Bayens' fingernail matched a sample taken from appellant.

*Wray v. State,* 547 N.E.2d 1062, 1064–65 (Ind.1989). The State charged Wray with murder, felony murder, robbery as a Class

A felony, and theft as a Class D felony. At trial, the jury found Wray guilty of murder and theft. On direct appeal, our supreme court affirmed his conviction.

Thereafter, in May of 1998, Wray filed a petition for post-conviction relief. After an evidentiary hearing, the post-conviction court denied Wray's petition. Wray now appeals.

## DISCUSSION AND DECISION

### Standard of Review

■ Post-conviction procedures do not afford the petitioner a super-appeal. *Williams v. State,* 706 N.E.2d 149, 153 (Ind.1999). Instead, the post-conviction procedures provide a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in our post-conviction rules. *Id.;* Ind. Post–Conviction Rule 1(1). The petitioner bears the burden of establishing his grounds for relief by a preponderance of the evidence. P–C.R. 1(5); *Harrison v. State,* 707 N.E.2d 767, 773 (Ind.1999), *petition for cert. filed,* (U.S. August 16, 1999) (No. 99–5793). If an issue was known and available but not raised on direct appeal, it is waived. *Williams,* 706 N.E.2d at 153. When the petitioner appeals from the negative judgment of the post-conviction court, the petitioner faces the rigorous burden of showing that the evidence as a whole, " 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.' " *Id.* at 154 (quoting *Weatherford v. State,* 619 N.E.2d 915, 917 (Ind.1993)). Absent that showing, we will not disturb the post-conviction court's decision. *Harrison,* 707 N.E.2d at 774.

### Issue One: Note from Jury

First, Wray contends that fundamental error occurred when the trial court failed to notify Wray or his trial counsel of a note from the jury during deliberation. Specifically, he argues that he was deprived of his

right to be present at a critical stage of the proceedings. We disagree.

 A criminal defendant has the right to be present at all stages of a criminal proceeding. IND. CONST. art. I, § 13. In addition, Indiana Code Section 34–1–21–6 (recodified at 34–36–1–6) provided that after the jury has retired for deliberation, if there is a disagreement among the jurors as to any part of the testimony or if the jurors desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into open court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties. Our supreme court has found that statute applicable to criminal proceedings. *Harrison v. State*, 575 N.E.2d 642, 648 (Ind.Ct.App.1991). Communication between the court and the jury that takes place without notice to the defendant or his counsel violates both Article I, Section 13 and Indiana Code Section 34–1–21–6. *Id.* at 648–49. Once such a violation is established, there is a presumption of harm, and the burden is on the State to show that no harm resulted from the improper contact. *Id.* at 649.

 Here, Wray argues that the jury inquired about several points of law when it sent a note to the judge during deliberation. The note reads:

OCT 27, 1987
5:05 pm-

Judge-

Point of clarification please-

Do all juror's [sic] have to be unanimous on both counts before a verdict is reached, or if we are deadlocked on one count, is it a not guilty verdict?

Is it possible to get a copy of your final instruction on reaching a verdict?

Thank you-

Foreman
/s/ Melford H. Johnson

[Beneath this handwritten note is type-written the following paragraphs:]

1. Do all jurors have to be unanimous on both counts before a verdict is reached? ANSWER: No.

2. If we are deadlocked on one count, is it a not guilty verdict? ANSWER: No.

3. Here is a copy of the court's Final Instruction No. 7. If you wish, the court will reread all of the Final Instructions.

Record at 128. At the hearing on post-conviction relief, Wray testified that he was never contacted by the court regarding the jury communication. In fact, the first time that he saw the jury note was when his attorney came to visit him in prison several months prior to the post-conviction relief hearing. Similarly, trial counsel for Wray testified that he did not remember being contacted by the court regarding a note from the jury. Further, trial counsel stated that there was nothing in his notes detailing such communication, and he would have objected to the typed response as it was contrary to his understanding of the law.

 Wray contends that the note from the jury triggered the protections outlined in Section 34–1–21–6, which required the trial court to call all parties into open court to discuss the judge's response. He asserts that since the court failed to follow the safeguards of the statute, the burden shifts to the State to prove that the judge's response to the note was harmless beyond a reasonable doubt. Before applying the principles set forth above, however, we must first determine whether there was in fact a "communication" between the court and the jury during deliberation.[1]

1. Initially, there is a dispute over whether Wray has waived this issue by failing to raise it on direct appeal. The purpose of post-conviction relief is to provide a means for raising issues unknown or unavailable to a defendant at the time of the original appeal.

*Carrington v. State*, 678 N.E.2d 1143, 1146 (Ind.Ct.App.1997), *trans. denied*. Here, Wray contends that neither he nor his counsel was aware of the jury note at the time of his direct appeal. Moreover, when appellate counsel filed a praecipe asking for a complete record

In denying post-conviction relief, the post-conviction court concluded that Wray presented "no evidence whatsoever" to show that the trial judge received the note during jury deliberation or that he ever answered the questions raised in the note. In reaching this conclusion, the court stated:

> While the 5:05 p.m. note is certified as part of the Circuit Court file, this court cannot automatically assume that these answers were actually given to the jury during deliberation. The defendant failed to present the testimony of any of the sitting jurors, the trial court judge, or the Circuit Court staff. If any assumptions are going to be made, it is that none would have provided any support to the defendant's current assertion that the Court actually gave these communications to the jury during deliberation. Further, the absence of any evidence of these communications in the pleadings, the docket sheet, the trial tapes or the Record of Proceedings is an indication that they never took place.... It is an equally probable conclusion that the trial court prepared the proposed answers to the jury's questions, but never communicated them to the jury. See State v. Daniels, 680 N.E.2d 829 (Ind.1997).

Record at 130. In response, Wray counters that the note speaks for itself. He argues that it is "absolutely ludicrous" to speculate that the court typed a response to the jury at the bottom of the note but failed to convey it to the jurors. We agree with the trial court that it is just as likely that the response was typed but never given to the jury. The better practice under these circumstances would have been for the trial court to make a record of its decision not to respond to the jury. But, inasmuch as our standard of review

of the proceedings, the note was not included despite certification from the court reporter, court clerk and trial judge that the record was full, true and complete. The State counters that it is "reasonable to assume" that the note was in the file at the time of the direct appeal.

prohibits us from reweighing the evidence, we decline Wray's invitation to reweigh the evidence in his favor. Here, Wray has failed to present any evidence that would enable us to reach a conclusion opposite that reached by the post-conviction court.

■ Wray maintains that the protections granted by Section 34–1–21–6 are triggered at the point when the jury asks a question, not when the court communicates a response. He argues that, even if he has failed to show that the court communicated a response to the jury, the court still violated the statute when it failed to contact Wray or his counsel. However, Wray cites no authority, and we can find none, to support that contention. Accordingly, Wray has waived our review of this argument.[2]

■ Waiver notwithstanding, it is well settled that when a trial judge merely responds to a jury question by denying the jury's request, any inference of prejudice which arises from the judge's failure to notify the parties and give them an opportunity to be present for his response is rebutted and the error, if any, is harmless. Marsillett v. State, 495 N.E.2d 699, 709 (Ind.1986); Johnson v. State, 674 N.E.2d 180 (Ind.Ct.App.1996), trans. denied. Moreover, Section 34–36–1–6 has been construed to mean that failure to inform the jury following a jury request for clarification is not reversible error per se. Kiner v. State, 643 N.E.2d 950, 955 (Ind. Ct.App.1994). Rather, the trial court may exercise discretion in determining whether certain questions of the jury should be answered. Id. Thus, it follows that the protections granted by Section 34–36–1–6 are triggered when the court communicates a response to a jury question, not at the point when the jury raises the question.

In the hearing on post-conviction relief, the court considered this matter apart from waiver. We do likewise.

2. See Indiana Appellate Rule 8.3(A)(7).

## Issue Two: Ineffective Assistance of Counsel

Second, Wray asserts that he received ineffective assistance of counsel when his appellate counsel failed to include necessary citations to the record to support his direct appeal. On direct appeal, Wray argued that the trial court erred when it allowed the jury to continue deliberations after it determined that the jury was deadlocked and that further deliberation would not result in a verdict on one count. *Wray*, 547 N.E.2d at 1067–68 (Ind.1989). However, our supreme court held that Wray's argument was not available for review because he had failed to provide any citation to the record which would support his contention. *Id.* at 1068. Wray maintains that he is entitled to post-conviction relief because he would have been granted a new trial on appeal if his appellate counsel had properly prepared the record. Again, we disagree.

In order to prevail on his claim of ineffective assistance of appellate counsel, Wray had to demonstrate to the post-conviction court that: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) there is a reasonable probability that because of counsel's errors the result of the proceeding is unreliable or unfair. *Harrison*, 707 N.E.2d at 777. When counsel's presentation of a claim on appeal is so deficient the reviewing court deems it waived, the appellant is in little better position than if counsel had failed to raise the issue in the first place. *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind.1997), *cert. denied* — U.S. ——, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). Counsel's representation in its entirety is nevertheless the touchstone of determining whether counsel's performance fell below an objective standard of reasonableness. *Id.*

Here, the post-conviction court concluded that Wray "failed to show that the performance of his appellate counsel was deficient or unreasonable in any respect." Record at 136. Moreover, it determined that there is "no reasonable probability" that the errors raised by Wray had "any persuasive effect whatsoever" upon the jury's verdict because the State presented overwhelming evidence of Wray's guilt at trial. Record at 137. In his brief, Wray presents no new evidence to support a different conclusion. Rather, he merely argues that he would have been entitled to a new trial under *Blevins v. State*, 591 N.E.2d 562 (Ind.Ct.App.1992).

The post-conviction court determined that *Blevins* was not applicable in this case. We agree. In *Blevins*, the trial court declared a mistrial following the foreman's statement that a verdict could not be reached. After the jury was discharged, one of the jurors commented that a verdict had been reached as to one of the co-defendants. The jury then returned a verdict form indicating that the defendant was found guilty of robbery. *Id.* at 563. On appeal, we reversed the defendant's conviction on the basis that a verdict rendered after discharge of a jury is null and void. *Id.* at 564.

Here, in contrast, the trial court did not declare a mistrial. Rather, it questioned the foreman as to whether further deliberation would result in a verdict. When the foreman stated that it would not, the court merely instructed the jury to complete the verdict form insofar as it applied to the count on which the jury had reached a unanimous verdict. Moreover, in this case, we cannot infer that the court intended to discharge the jury in its instruction to complete a verdict form only as to one count of the charge because when the jury returned with a verdict, the court asked the foreman: "Have you reached a verdict in this case, *on both counts?*" Record at 165 (emphasis added). Therefore, we affirm the post-conviction court's conclusion that Wray did not receive ineffective assistance of appellate counsel.

## Issue Three: Further Deliberation

Finally, Wray argues that fundamental error occurred when the trial court allowed the jury to continue deliberation

after it found that further deliberation would not result in a verdict on one count. We determine, as did the post-conviction court, that Wray's trial counsel failed to object to the verdict on these grounds at trial. Moreover, as we have noted, our supreme court held on direct appeal that Wray failed to provide any citation to the record which would support his contention. Thus, we conclude that Wray has waived review of such error on appeal from denial of post-conviction relief. *See Harrison,* 707 N.E.2d at 788; *Sipe v. State,* 690 N.E.2d 779, 781 (Ind.Ct.App.1998).

Affirmed.

BROOK, J., and ROBB, J., concur.